2015-1494

---

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

---

A&J MANUFACTURING, LLC, and A&J MANUFACTURING, INC.,

*Appellants*,

v.

UNITED STATES INTERNATIONAL TRADE COMMISSION,

*Appellee*,

CHAR-BROIL, LLC, and

OUTDOOR LEISURE PRODUCTS, INC.,

*Intervenors,*

and

OUTDOOR DIRECT CORPORATION,

*Third-Party.*

---

On appeal from the United States International Trade Commission
in Investigation No. 337-TA-895

---

### BRIEF OF APPELLEE
### UNITED STATES INTERNATIONAL TRADE COMMISSION

CATHY CHEN
Attorney for Appellee
Office of the General Counsel
U.S. International Trade Commission
500 E Street, SW
Washington, DC 20436
Telephone (202) 205-2392

DOMINIC L. BIANCHI
General Counsel
Telephone (202) 205-3061

SIDNEY A. ROSENZWEIG
Acting Assistant General Counsel
Telephone (202) 708-2532

# TABLE OF CONTENTS

Page(s)

STATEMENT OF RELATED CASES ................................................................1

STATEMENT OF JURISDICTION.................................................................1

STATEMENT OF THE ISSUES...................................................................2

STATEMENT OF THE CASE......................................................................3

I.    U.S. PATENT NO. 8,381,712 ...........................................................5

      A.    The Asserted Claims ............................................................6

      B.    Relevant Prosecution History ...............................................8

II.   COMMISSION PROCEEDINGS ..............................................................17

      A.    Summary Determination of Noninfringement ....................................17

            1.    The ALJ's Summary Determination.........................................17

            2.    The Commission's Review of the Summary
                  Determination...........................................................19

      B.    The ALJ's Final Initial Determination.........................................20

      C.    The Commission's Final Determination .........................................23

SUMMARY OF THE ARGUMENT ...................................................................27

ARGUMENT .................................................................................30

I.    STANDARD OF REVIEW ...................................................................30

II.   THE COMMISSION CORRECTLY CONSTRUED
      "OPENABLE [] COVER" IN CLAIMS 1 AND 17 TO
      EXCLUDE PORTIONS OF THE GRILL ENCLOSURE THAT
      ARE NOT OPENABLE .....................................................................31

      A.    The Plain and Ordinary Meaning of "Openable [] Cover"
            Excludes Portions of a Grill Enclosure That Are Not
            Openable.................................................................31

# TABLE OF CONTENTS
### (continued)

B.    The Prosecution History Refutes A&J's Proposed Construction ........................................................................34

    1.    The Commission Properly Used the Prosecution History to Support the Plain Meaning of the Disputed Claim Terms.............................................................35

    2.    The "Openable [] Cover" and the "Cover Includes at Least One Exhaust" Limitations Were Added to the Claims to Distinguish Prior Art Grills with Exhausts Located on the Fixed Portion of the Grill Enclosure................36

    3.    The Court Should Not, As A&J Urges, Ignore the Prosecution History..................................................40

III.    THE COMMISSION CORRECTLY CONSTRUED "OPENABLE [] COVER MEANS" TO BE LIMITED TO THE STRUCTURES DISCLOSED IN THE PATENT FOR SELECTIVELY COVERING THE FIRST OR SECOND GRILL..............43

A.    A&J Told the PTO Precisely What the Corresponding Structures for "Openable [] Cover Means" Are and That Representation Is at Odds with A&J's Argument on Appeal..............................................................................44

B.    A&J Cannot Recapture Through Equivalents What It Disavowed in Prosecution ...................................................48

    1.    In Order to Secure the Allowance of Claim 10, A&J Disavowed the Equivalent Structure That It Now Seeks to Recapture ..................................................49

    2.    The PTO Rules and Regulations Do Not Preclude Finding a Disavowal for Claim 10............................................51

    3.    The Disavowal Is Effective as to Claim 10, and Not Merely Claims 1 and 17.........................................................53

# TABLE OF CONTENTS
(continued)

IV.    SUBSTANTIAL EVIDENCE SUPPORTS THE
       COMMISSION'S FINDING OF NONINFRINGEMENT BY
       THE CHAR-BROIL 463724512 GRILL ......................................................58

CONCLUSION ........................................................................................................61

# TABLE OF AUTHORITIES

**Cases** <span style="float:right">Page(s)</span>

*A&J Mfg., LLC v. USITC,*
   No. 2014-1742, 584 F. App'x. 933 (Fed. Cir. 2014)............................................1

*AccuScan, Inc. v. Xerox Corp.,*
   76 F. App'x 290 (Fed. Cir. 2003) ........................................35

*Alloc, Inc. v. ITC,*
   342 F.3d 1361 (Fed. Cir. 2003) ........................................42

*Alpex Comput. Corp. v. Nintendo Co.,*
   102 F.3d 1214 (Fed. Cir. 1996) ........................................49

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.,*
   239 F.3d 1343 (Fed. Cir. 2001) ........................................42

*B. Braun Med. Inc., v. Abbott Labs.,*
   124 F.3d 1419 (Fed. Cir. 1997) ....................................43, 45

*Baldwin Graphics Sys., Inc. v. Siebert, Inc.,*
   512 F.3d 1338 (Fed. Cir. 2008) ........................................53

*Bell Atl. Network Servs., Inc. v. Covad Commc'ns Grp., Inc.,*
   262 F.3d 1258 (Fed. Cir. 2001) ........................................34

*Biogen, Inc. v. Berlex Labs., Inc.,*
   318 F.3d 1132 (Fed. Cir. 2003) ........................................54

*Blackboard, Inc. v. Desire2Learn, Inc.,*
   574 F.3d 1371 (Fed. Cir. 2009) ........................................47

*Comput. Docking Station Corp. v. Dell, Inc.,*
   519 F.3d 1366 (Fed. Cir. 2008) ....................................41, 42

*CVI/Beta Ventures, Inc. v. Tura LP,*
   112 F.3d 1146 (Fed. Cir. 1997) ........................................53

*Dig. Biometrics, Inc. v. Identix, Inc.,*
   149 F.3d 1335 (Fed. Cir. 1998) ........................................55

# TABLE OF AUTHORITIES
(continued)

**Cases**      Page(s)

*Exhibit Supply Co. v. Ace Patents Corp.*,
315 U.S. 126 (1942) ...........................................................................41

*Fenner Invs., Ltd. v. Cellco P'ship*,
778 F.3d 1320 (Fed. Cir. 2015) .........................................................41

*Hockerson–Halberstadt, Inc. v. Avia Grp. Int'l, Inc.*,
222 F.3d 951 (Fed. Cir. 2000) ...........................................................41

*In re Hyatt*,
708 F.2d 712 (Fed. Cir. 1983) ...........................................................32

*Intel Corp. v. USITC*,
946 F.2d 821 (Fed. Cir. 1991) .....................................................30, 59

*Invitrogen Corp. v. Biocrest Mfg., L.P.*,
327 F.3d 1364 (Fed. Cir. 2003) .........................................................36

*J&M Corp. v. Harley-Davidson, Inc.*,
269 F.3d 1360 (Fed. Cir. 2001) .........................................................49

*In re McDaniel*,
293 F.3d 1379 (Fed. Cir. 2002) .........................................................52

*Med. Instrumentation & Diagnostics Corp. v. Elekta AB*,
344 F.3d 1205 (Fed. Cir. 2003) .........................................................43

*Norgren Inc. v. ITC*,
699 F.3d 1317 (Fed. Cir. 2012) .................................................. 30-31

*Nutrinova Nutrition Specialties and Food Ingredients GmbH v. ITC*,
224 F.3d 1356 (Fed. Cir. 2000) .........................................................60

*Omega Eng'g, Inc. v. Raytek Corp.*,
334 F.3d 1314 (Fed. Cir. 2003) .........................................................35

*Outdoor Direct Corp. v. USITC*,
No. 2015-1751 (Fed. Cir. Dec. 22, 2015), ECF No. 43 ....................26

# TABLE OF AUTHORITIES
(continued)

**Cases**                                                                    Page(s)

*Paragon Sols., LLC v. Timex Corp.*,
    566 F.3d 1075 (Fed. Cir. 2009) ........................................................53

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) (en banc) ........................................ 31-32, 33, 34

*Profectus Tech. LLC v. Huawei Techs. Co.*,
    No. 2015-1016, 2016 WL 3033148 (Fed. Cir. May 26, 2016)..........................32

*Regents of the Univ. of Minn. v. AGA Med. Corp.*,
    717 F.3d 929 (Fed. Cir. 2013) ........................................................49

*SafeTCare Mfg., Inc. v. Tele-Made, Inc.*,
    497 F.3d 1262 (Fed. Cir. 2007) ......................................................42

*Seachange Int'l, Inc. v. C-COR, Inc.*,
    413 F.3d 1361 (Fed. Cir. 2005) ......................................................53-54, 57-58

*Senior Techs., Inc. v. R.F. Techs., Inc.*,
    76 F. App'x 318 (Fed. Cir. 2003) ................................................... 35-36

*SmithKline Beecham Corp. v. Apotex Corp.*,
    439 F.3d 1312 (Fed. Cir. 2006) ......................................................61

*Southwall Techs., Inc. v. Cardinal IG Co.*,
    54 F.3d 1570 (Fed. Cir. 1995) ....................................................... 34-35

*Spansion, Inc. v. ITC*,
    629 F.3d 1331 (Fed. Cir. 2010) ......................................................30, 59

*Springs Window Fashions LP v. Novo Indus., L.P.*,
    323 F.3d 989 (Fed. Cir. 2003) ........................................................40

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*,
    135 S. Ct. 831 (2015)................................................................30

*Valmont Indus., In. v. Reinke Mfg. Co.*,
    983 F.2d 1039 (Fed. Cir. 1993) ......................................................48

# TABLE OF AUTHORITIES
(continued)

**Cases** <u>Page(s)</u>

*In re Van Geuns,*
988 F.2d 1181 (Fed. Cir. 1993) ..........................................................52

*Vitronics Corp. v. Conceptronic, Inc.,*
90 F.3d 1576 (Fed. Cir. 1996) ............................................................34

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.,*
520 U.S. 17 (1997)...............................................................................35

*In re Watts,*
354 F.3d 1362 (Fed. Cir. 2004) ..........................................................52

**Statutes**

5 U.S.C. § 706(2) ....................................................................................30

19 U.S.C. § 1337........................................................................................3

35 U.S.C. § 112(f)............................................................................*passim*

**Regulations**

19 C.F.R. § 210.18 ....................................................................................3

19 C.F.R. § 210.42(h) .............................................................................24

19 C.F.R. §§ 210.43-.45............................................................................4

37 C.F.R. § 41.37(c)(1)(iv) (2012) ....................................................51, 52

**Rules**

Manual of Patent Examining Procedure § 1205.02
(8th ed. rev. 9, Aug. 2012)..................................................................51

## STATEMENT OF RELATED CASES

Appellee U.S. International Trade Commission ("the Commission") has no further information concerning related cases other than the statement provided by Appellants A&J Manufacturing, LLC and A&J Manufacturing, Inc. (collectively, "A&J").

## STATEMENT OF JURISDICTION

Although A&J had earlier taken a premature appeal on certain issues, *see A&J Mfg., LLC v. USITC*, No. 2014-1742, 584 F. App'x. 933 (Fed. Cir. 2014), the Commission determinations presently under review became final when the Commission issued its final determination on February 3, 2015.  A&J filed with this Court a timely petition for review from that final determination, and the Commission agrees with A&J that this Court has jurisdiction over the appeal.

## STATEMENT OF THE ISSUES

Asserted claims 1 and 17 of the sole asserted patent, U.S. Patent No. 8,381,712 ("the '712 patent"), claim a barbecue grill with "openable [first and second] cover[s]," each of which "includes at least one exhaust." Similarly, asserted claim 10, which is drafted in means-plus-function format, calls for "openable [first and second] cover means," each of which "includes" at least one exhaust means. The issues are properly framed as follows:

(1)    In view of the plain language of claims 1 and 17, which calls for "openable [] cover[s]," as well as the prosecution history, which distinguishes such covers from "fixed portions of the [grill] enclosures which are not openable (i.e., not covers)," did the Commission correctly construe "openable [] cover" to exclude "any portion of the grill enclosure that is not openable (*i.e.*, 'fixed')"?

(2)    In view of the intrinsic record, did the Commission correctly determine that the disclosed corresponding structure for claim 10's "openable [] cover means for selectively covering the [first or second] grill" is "a cover or a lid that excludes any portion of the grill enclosure that is not openable (*i.e.*, fixed)"?

(3)    Does substantial evidence support the Commission's finding that the Char-Broil Model 463724512 Charcoal/Gas Grill (hereinafter "the Char-Broil 463724512 Grill") does not infringe the asserted claims because its openable cover does not include an exhaust?

2

# STATEMENT OF THE CASE

A&J appeals the Commission's final determination in *Certain Multiple Mode Outdoor Grills and Parts Thereof*, Inv. No. 337-TA-895. A multiple-mode outdoor grill is one that can be used to prepare food using various modes such as barbecuing with charcoal, wood, or gas-based fuels. A376 at 1:28-34.

The Commission instituted this investigation based on A&J's complaint, which alleged violations of section 337 of the Tariff Act of 1930, as amended (19 U.S.C. § 1337) ("section 337") by reason of importation of accused grills that infringe claims 1-20 of the '712 patent. There were a number of respondents (*i.e.*, accused infringers) in the Commission investigation. Two of those respondents, Char-Broil, LLC ("Char-Broil") and Outdoor Leisure Products, Inc. ("OLP"), have intervened in support of the Commission in the present appeal.[1]

As will be discussed in more detail, *infra*, the terms "openable [first and second] cover[s]" of asserted claims 1 and 17 were originally construed by the Commission's presiding Administrative Law Judge ("ALJ") in connection with a motion for summary determination of noninfringement. 19 C.F.R. § 210.18. In view of the patent in suit's intrinsic record, including the plain language of the

---

[1] Outdoor Direct Corporation, which is identified in the case caption as a "third-party," was a respondent in the underlying investigation and withdrew as an intervenor from this appeal. *See* Order (Dec. 22, 2015), ECF No. 71.

claims, the specification, and the prosecution history, the ALJ construed the "openable [] cover" terms to mean "a cover that excludes any portion of the grill enclosure that is not openable (*i.e.*, fixed)." A1852-57. In addition, the ALJ interpreted the terms "openable [first and second] cover means" of claim 10 not as means-plus-function limitations, but instead to receive the same construction as the "openable [] cover" terms of claims 1 and 17.

On review by the Commission, *see* 19 C.F.R. §§ 210.43-.45, the Commission issued a Notice and an Opinion (hereinafter, the "Summary Determination Opinion") that adopted the ALJ's claim construction of "openable [] cover" for claims 1 and 17, and affirmed his infringement determinations as to those claims. A3910; A3925-26; A3934-38. In addition, the Commission found that the "openable [] cover means" terms of claim 10 are to be construed under 35 U.S.C. § 112(f), and vacated the noninfringement determinations as to claim 10 and its dependent claims (claims 11-16). The Commission remanded the case to the ALJ for further proceedings.

After the completion of proceedings before the ALJ, including the evidentiary hearing, the ALJ issued his Final Initial Determination (hereinafter, the "Final ID") which found a violation of section 337 as to some respondents and no violation as to others. A&J petitioned the Commission for review, and the

Commission issued a Notice and an Opinion on February 3, 2015, that affirmed in part and reversed in part the Final ID.

On appeal, A&J argues that the Commission erred in its claim constructions of "openable [] cover" and "openable [] cover means," resulting in the Commission's noninfringement determination as to seven accused products/product lines. A&J also takes issue with the Commission's resolution of a factual dispute regarding infringement of an eighth accused product, the Char-Broil 463724512 Grill.

## I.    U.S. PATENT NO. 8,381,712

A&J owns the '712 patent, which relates to simultaneous multiple mode barbecue grills, *i.e.*, grills having cooking units that can be "operated simultaneously to prepare food using multiple cooking modes." A371 at Abstract. The patent illustrates an exemplary multiple mode barbecue grill in Figure 1, reproduced below:



FIG. 1

Of special note for this appeal are the openable covers **111** and **121** in that figure, and the exhausts **112** and **122** included on the openable covers (the smokestacks in the figures).  In more context, the patent explains:

> The grill **100** includes a first cooking mode unit **110** and a second cooking mode unit **120**. The first cooking mode unit **110** may, for example, operate using a gas based fuel such as propane . . . . The first cooking mode unit **110** may include an openable cover **111** with exhausts **112**. The second cooking mode unit **120** may, for example, operate using a charcoal based fuel . . . . The second cooking mode unit **120** may include an openable cover **121** with exhaust **122**.

A376 at 2:27-38.  Figures 2 and 3 of the patent are substantially the same.  Figure 2 adds a work surface tray (**250**) to Figure 1.  A374; A377 at 3:17-22.  Figure 3 adds a fourth cooking mode unit (**324**) which may operate as a firebox connected to the second cooking unit (**320**).  A375; A377 at 3:41-52.  Figures 2 and 3 show the same openable covers (called **211** and **221** in Figure 2, and **311** and **321** in Figure 3) and exhausts (called **212** and **222** in Figure 2, and **312** and **322** in Figure 3) as in Figure 1.  A374-75; A377 at 3:1-2, 3:25-27.  The written description provides no further description of the openable covers and their exhausts.

## A.    The Asserted Claims

Claims 1-20 are asserted.  Claims 1, 10, and 17 are the independent claims. A&J challenges the Commission's constructions of "openable [] cover" in claims 1 and 17, and "openable [] cover means" in claim 10.  Claims 1 and 17 are

substantially the same for purposes of this appeal.  Claim 10 is substantially the

same as claims 1 and 17, but for the use of the "means for" terminology.  None of

the dependent claim limitations are in dispute on appeal.

Claims 1 and 10 read as follows, with the claim terms at issue on appeal

highlighted:

> **Claim 1.**  A barbecue grill having multiple cooking units, comprising:
>
> a support structure configured to support a plurality of cooking units;
>
> a first cooking unit configured to cook food using gas cooking fuel, the first cooking unit attached to the support structure and including at least one first grill, the first cooking unit further including **an openable first cover** attached to the first cooking unit that selectively covers the first grill, **wherein the first cover includes at least one exhaust**; and
>
> a second cooking unit configured to cook food using solid cooking fuel, the second cooking unit attached to the support structure and including at least one second grill, the second cooking unit further including **an openable second cover** attached to the second cooking unit that selectively covers the second grill, **wherein the second cover includes at least one exhaust**,
>
> wherein the first cooking unit and the second cooking unit are simultaneously operable to cook food and the first grill and second grill are selectively and independently coverable.

**Claim 10.**  A barbecue grill having multiple means for cooking, comprising:

a first means for cooking food using gas cooking fuel, the first means for cooking including at least one first grill and **an openable first cover means for selectively covering the first grill**, wherein the first cover means is attached to the first means for cooking and **includes at least one exhaust**;

a second means for cooking food using solid cooking fuel, the second means for cooking including at least one second grill and **an openable second cover means for selectively covering the second grill**, wherein the second cover means is attached to the second means for cooking and **includes at least one exhaust means**; and

a structure means for supporting the first means for cooking and the second means for cooking;

wherein the first means for cooking and the second means for cooking are simultaneously operable to cook food and the first grill and second grill are selectively and independently coverable.

A377-78 at 4:54-5:8, 5:40-59 (emphasis added).

## B.    Relevant Prosecution History

The '712 patent took nearly eight years from application to issuance, including at least six office actions rejecting the application claims and at least three interviews with the U.S. Patent and Trademark Office ("PTO") examiner. Originally, the application claims called for little more than a barbecue grill having two cooking units supported on a common structure, with no limitations as to a "cover" or its "exhaust."  A9944-48; A9996-97; A10033-34.  The examiner

8

repeatedly rejected the broad claims as anticipated by various prior art.  A9984-85; A10011-12; A10054-56.

In response to prior art rejections of those claims, A&J amended all of the claims to require first and second "retractable covers" to selectively enclose the first and second cooking units of a barbecue grill.  A10072-74.  In a subsequent office action, the examiner rejected the claims as obvious.  Specifically, the examiner cited U.S. Patent No. 4,665,891 ("Nemec") (FIG. 1 reproduced below) for disclosing "a retractable (hinged) cover **34** to selectively enclose the first cooking unit" and "a retractable (hinged) cover **86** to selectively enclose the second cooking unit."  A10090-91 (emphasis added).



FIG.1

A10416.

9

Following the rejection over Nemec, A&J cancelled all claims, and submitted a set of new claims, including three new independent claims: application claims 22, 32, and 40, corresponding to issued claims 1, 10, and 17, respectively. Newly added application claims 22 and 40 recited "a hingedly attached [] cover," and newly added application claim 32 was substantially the same as claim 22 but for the use of "means for" terminology. A10125-28. It was also through this amendment that A&J first introduced dependent claims that required each "cover" to have an "opening" to permit the passage of gases. A10126.

In response to these amendments, the examiner rejected application claims 22, 32, and 40 under the written description requirement of section 112 for failing to disclose the "hingedly attached cover." A10147. Similarly, the examiner objected to the drawings for failing to "show every feature of the invention specified in the claims," in particular the "hinged attachment of the cover." A10146. The examiner also rejected claim 32 under the written description requirement for failing to disclose the corresponding "structures recited in the specification as means for cooking, means for covering, means for supporting, means for preparing food, means for holding or means for permitting the passage of gas." A10148.

Application claims 22, 32, and 40 were also rejected as obvious in view of Nemec and U.S. Patent No. 6,209,533 ("Ganard"). A10146-47; A10158. The

10

examiner relied on Nemec, specifically covers **34** and **86** (FIG. 1), for the

disclosure of "hingedly attached [first and second] cover[s]," respectively.

A10149-52.  The examiner also found that Nemec's disclosure of smoke stack **48**

on the grill body taught an "opening" in the first cooking unit.  A10155.  The

examiner cited Ganard for the disclosure of an "opening" in the second cooking

unit.  A10158.  The examiner recognized that the claims required the openings to

be on the covers, but reasoned that "[h]aving the opening on the cover instead of

on the body of the unit as taught by [Nemec and Ganard] is deemed a matter of

rearrangement of parts that would not affect the functioning of the unit."  A10155;

A10158.

On August 25, 2011, A&J responded to the rejection.  A&J amended the

claims by replacing "hingedly attached [] cover" with "openable [] cover."

A10193-96.  A&J also deleted the dependent claims reciting "opening," and

amended the independent claims to require that the cover include "at least one

exhaust."  *Id.*  To traverse the section 112 rejection of application claim 32, A&J

identified the lids on cooking units **110** (Fig. 1) and **210** (Fig. 2) as corresponding

structures for "first cover means" and the lids on cooking units **210** (Fig. 1) and

**220** (Fig. 2) as corresponding structures for the "second cover means."  A10200-

02.  To traverse the examiner's prior art rejections, A&J argued that the claim

language added to application claims 22, 32, and 40 (regarding the openable first

and second covers including at least one exhaust) formed the basis of patentability for these claims. A10203-08. In particular, A&J distinguished Nemec and Ganard based on the configuration of smokestacks on the claimed openable covers:

> [N]either Nemec nor Ganard teaches or suggests that the configuration of one smoke stacks [sic] on the cover of one cooking unit would be based on the type of fuel used in that cooking unit, and that the configuration of another smoke stack on the cover of another cooking unit would be based on the type of fuel used in that other cooking unit. Thus, applicant submits that Nemec and Ganard fail to teach or suggest . . . 'an openable first cover. . . includ[ing] at least one exhaust' . . . and 'an openable second cover attached to the second cooking unit… includ[ing] at least one exhaust.'

A10204-05.

The examiner subsequently issued a final rejection of the claims. The examiner rejected application claims 22, 32 and 40 under the written description requirement, this time for failing "to describe at least one exhaust 'having a configuration based on the type of fuel used in the cooking unit,' what this configuration is and how it was made." A10228. The examiner also objected to the drawings for failing to show the claimed first and second covers and their exhausts. A10227.

The examiner further rejected application claims 22, 32, and 40 as obvious. A10228-41. In particular, the examiner found the claims obvious over U.S. Patent No. 4,878,477 ("McLane") in view of U.S. Patent No. 4,700,618 ("Cox").

12

McLane discloses a barbecue grill having two cooking units **14**, **16** (FIG. 1)

attached to a supporting structure.  A10229.  The examiner found that Cox taught

the only elements not disclosed by McLane, namely "openable covers" and covers

"including at least one exhaust"  A10229-35.  The Cox barbecue grill is illustrated

below.



A10421.  As shown in FIG. 1 above, the examiner found that Cox discloses a

barbecue grill having an openable first cover **38** on smoker enclosure **39** and an

openable second cover **40** that provides access to the interior of oven **16**.  A10229-

32; A10420 at Abstract; A10423-24 at 2:56-57, 3:6-8. With regard to the "exhaust"

limitations, the examiner explained that Cox teaches one exhaust **92** on the first

cooking unit and two exhausts **18** and **22** on the second cooking unit.  A10232;

A10423-24 at 2:56-62, 3:20-29, 4:56-58.  The examiner reasoned that the

limitations that at least one exhaust is on the first and second covers instead of on the cooking units were merely a matter of rearrangement of parts that would not affect the functioning of the units. A10232-33. The examiner further elaborated that "[i]n this case the exhaust on another part of the unit other than the cover would not make the exhaust nonfunctional." A10233.

Based on an interview with the examiner, A10273, A&J amended the drawings to include reference numerals identifying the "openable [] cover" and "exhaust" elements of each cooking unit and amended the specification to recite the added reference numerals. A10276-77; A10286-88. In particular, A&J amended the specification and drawings to identify elements **111**, **121**, **211**, **221**, **311**, and **321** in Figures 1-3 as illustrating "openable cover[s]" in the patent. *Id.* The examiner entered the amendments, but nonetheless rejected the claims as obvious, readying the case for appeal to the Board of Patent Appeals and Interferences ("the Board"). A10295.

A&J filed its appeal brief with the Board on September 4, 2012. A10306; A10329. A&J argued in the appeal brief that application claim 22 (issued as claim 1) was not rendered obvious over McLane in view of Cox because, first, the combination of McLane and Cox would render McLane "unsatisfactory for its intended purpose," and, second, even if the references could be combined, "the combination still does not teach or suggest 'wherein the first cover includes at least

one exhaust,' and 'wherein the second cover includes at least one exhaust,' as recited in claim 22 in light of the prior art of record which teaches away from combining the features of claim 22." A10317; A10321. With respect to the second argument, A&J stated:

> The Office suggests that combining the barbecue grill of McLane with the oven/smoker enclosures and chimneys described in Cox would render obvious 'wherein the first cover includes at least one exhaust' and 'wherein the second cover includes at least one exhaust,' as recited in claim 22. Office Action, pp. 7-8. Assuming, for the sake of argument, that this combination is even possible (which it is not), **at best it would result in a barbecue grill with chimneys connected to exit ports on the fixed portions of the oven/smoker enclosures which are not openable (i.e., not covers).** Thus, even if the references could be combined in the manner suggested in the Office Action, the combination still fails to teach 'wherein the first cover includes at least one exhaust,' and 'wherein the second cover includes at least one exhaust,' as recited in claim 22.

A10321 (emphasis added). In further support of this argument, A&J asserted that the prior art of record, specifically U.S. Patent No. 6,189,528 ("Oliver"), taught away from including exhausts on the openable covers. A10322.

> [T]he teachings of Oliver support the contention that **including at least one exhaust on an openable cover should not be deemed a matter of rearrangement of parts that would not affect the functioning of the units.** As Oliver clearly demonstrates, including exhausts on the cover does affect the functioning of the unit, and may not be desirable to one of skill in the art.

Id. (emphasis added).

15

In separate subsections of the appeal brief, A&J argued for the patentability of application claims 32 and 40 (issued as claims 10 and 17). Those arguments echoed those presented for application claim 22. For application claim 32, A&J explained:

> Appellant respectfully submits that the combination of **McLane and Cox fails to render obvious the features of claim 32 for similar reasons to those discussed above with reference to claim 22**. Specifically, the cited references fail to render obvious the features of claim 32 at least because (1) the combination of . . . McLane with the oven/smoker enclosures and chimneys described in Cox would render McLane unsatisfactory for its intended purpose with regard to claim 32, and **(2)** even if the references could be combined as suggested, **the combination of McLane and Cox fails to teach or suggest 'wherein the first cover means…includes at least one exhaust' and 'wherein the second cover means…includes at least one exhaust means,' as recited in claim 32, in light of Oliver which teaches away from combining the features of claim 32.**

A10323-24 (emphasis added). Similarly, A&J argued for the patentability of application claim 40 under its own separate subheading, but other than the differing claim number and the omission of "means," the text of A&J's argument for claim 40 was identical to the argument made for claim 32. A10324-25. Thereafter, the pending claims were allowed. A10347.

## II.    COMMISSION PROCEEDINGS

### A.    Summary Determination of Noninfringement

#### 1.    The ALJ's Summary Determination

On March 5, 2014, several respondents including Char-Broil and OLP, filed

a motion for summary determination of noninfringement.  They argued that eight

of the accused products/product lines do not have "openable [first and second]

cover[s]" that include an exhaust and "openable [first and second] cover means"

that include an exhaust means.[2]  In opposition to the motion, A&J asserted that the

"openable [] cover" and "openable [] cover means" limitations can include both

fixed and openable portions of a grill enclosure, A1852, thus broadening the claims

to include more locations for the claimed exhausts and exhaust means.  The

respondents argued that the plain meaning of the "openable [] cover" terms do not

include fixed portions of the grill enclosure, and that during prosecution A&J

explicitly disclaimed grills having exhausts attached to fixed portions of the grill

enclosure.  A1852-53.

The ALJ granted the motion in part.  He construed the terms "openable []

cover" and "openable [] cover means" to mean "a cover that excludes any portion

---

[2] The eight accused products/product lines include, among others, four Char-Broil Grills (Model Nos. 12210767, 14201767, 463724512, and 463724514) and certain OLP Smoke Hollow Grills (Model Nos. PS9500, 8000, 8500, 3500, 3300, and 6500) (hereinafter, "OLP's Redesigned Grills").  A3928.

of the grill enclosure that is not openable (*i.e.* fixed)."[3]  A1853.  The ALJ noted that "[t]he plain language of the disputed claim term 'openable [] cover' requires that the cover be openable."  *Id*.  He determined that "[i]n view of the plain meaning of the claim language and the prosecution history of the '712 patent, the 'openable cover' limitations cannot be met by grills having exhausts on fixed portions."  *Id*.  The ALJ found that the examiner during prosecution rejected the claimed invention over prior art grills, such as Nemec, Ganard, and Cox, having exhausts on the fixed portions of the grills as opposed to their openable covers.  A1853-54.

Moreover, the ALJ found that A&J had disclaimed any construction of the term "openable [] cover" that included fixed portions of the grill enclosure.  A1856-57.  He also found A&J's arguments in its appeal brief to the Board concerning the McLane and Cox combination to clearly and unmistakably show that A&J did not regard the fixed portion of the grill enclosure as "openable."  A1855.  The ALJ noted that this was consistent with the plain meaning of the term "openable cover."  *Id*.

---

[3] In so finding, the ALJ found that notwithstanding the use of the "means for" language in claim 10, the claim terms should not be construed as a means-plus-function claim limitation.

Applying this construction to the eight accused products/product lines at issue in the motion, the ALJ found that there was no genuine issue of material fact that all but one of them lack exhausts on the "openable [] cover" and "openable [] cover means" and therefore do not infringe the patent in suit.  A1857.  The ALJ found that a question of fact existed with respect to the Char-Broil 463724512 Grill.  *Id.*

### 2.     The Commission's Review of the Summary Determination

A&J petitioned the Commission for review of the ALJ's decision.  Relevant to this appeal, A&J argued that the ALJ erred in his construction of "openable [] cover" in claims 1 and 17 by importing limitations from the preferred embodiment into the claims.  A3004.  A&J also argued that the ALJ erred in failing to construe claim 10 as a means-plus-function claim.  *Id.*

On June 24, 2014, the Commission affirmed-in-part and vacated-in-part the ALJ's decision.  A3909-10.  The Commission adopted the ALJ's construction of "openable [] cover," concluding:

> We agree that one of ordinary skill in the art would not consider the fixed unopenable portion of the grill enclosure to be within the term 'openable [] cover.' Moreover, the applicant's amendments and statements made during prosecution unambiguously define the scope of the limitation.  The Commission finds that a reasonable competitor would believe that the applicant clearly and unmistakably surrendered claim scope in the amendments and statements made to the PTO.

19

A3925.  The Commission affirmed the ALJ's findings of noninfringement of claims 1 and 17 by the seven accused products/product lines that do not include exhausts on their "openable [] cover."  A3934-38.

The Commission also determined that the terms "openable [] cover means" in claim 10 are means-plus-function limitations and vacated the ALJ's grant of summary determination of noninfringement as to claims 10-16.  A3926.  The Commission found that the claimed function for "openable [first and second] cover means" was "selectively covering the [first or second] grill," and instructed the ALJ to identify the corresponding structures disclosed in the specification that performed the claimed function.  A3927-28.  The case was remanded to the ALJ.

## B.    The ALJ's Final Initial Determination

After the completion of proceedings before the ALJ, including the evidentiary hearing, the ALJ issued his Final ID, finding a violation of section 337 as to OLP and other respondents and no violation as to Char-Broil and two other respondents.  A7.

The claim terms "exhaust," "exhaust means," and "openable [] cover means" had been in dispute at the evidentiary hearing.  A5607.  The parties argued before the ALJ that the term "exhaust means" in claim 10 should be construed the same as the term "exhaust" in claims 1 and 17.  A5614-15; A5614 n.13.  Specifically, A&J proposed both terms should have the same ordinary meaning, which is "a passage

in the cover through which smoke, waste gases, and/or cooking vapors pass out of the cooking unit." A5614. Respondents argued that the terms refer to "a pipe, duct or similar structure that is attached to and extends from an openable cover, through which exhaust gases are expelled." *Id*. Because the ALJ found nothing in the intrinsic record warranted a departure from the ordinary meaning, he adopted A&J's proposed construction for the terms "exhaust" and "exhaust means."[4] A5615-19.

With respect to the terms "openable [] cover means" in claim 10, the Commission found during the summary determination phase that they should be construed pursuant to 35 U.S.C. § 112(f) and that the claimed function is "selectively covering the [first or second] grill." A5621. A&J argued that the "openable [] cover means" has two sets of structures shown in the patent in suit that selectively cover a grill. A4422. There is no dispute that the openable covers **111**, **211**, **311**, **121**, **221** and **321** shown in FIGS. 1-3 of the '712 patent are disclosed structures for the "openable [] cover means" terms. However, A&J also asserted that the fourth cooking mode unit **324** (FIG. 3) has a lid (which is not identified in FIG. 3) that is also a corresponding structure for the "openable []

---

[4] The ALJ found that a person of ordinary skill in the art with respect to the asserted patent is a person with an engineering degree or equivalent experience in the engineering field, plus approximately two to four years of experience in the field of mechanical engineering designing barbecue grills. A5613-14.

cover means." A4422. The Respondents argued that the same amendments and arguments which were found to limit the scope of "openable [] cover" in claims 1 and 17 apply with equal force and effect to limit the scope of equivalents for the terms "openable [] cover means" in claim 10. A4587-90.

In view of the intrinsic record, the ALJ determined that the corresponding structure for the "openable [] cover means" terms is "a cover or a lid that excludes any portion of the grill enclosure that is not openable (*i.e.*, fixed)." A5621. In particular, the ALJ found that the '712 patent discloses covers **111**, **211** and **311** in FIGS. 1-3, as the corresponding structure for the "openable first cover means," and covers **121**, **221** and **321** in FIGS. 1-3, as the corresponding structure for the "openable second cover means." *Id.* The ALJ also found that the same prosecution history disavowal that applies to claims 1 and 17 also applies to claim 10 because A&J's brief to the Board applied the same arguments to overcome the rejection of each of the independent claims based on the combination of McLane and Cox. A5622-24.

The ALJ rejected A&J's argument that the specification's disclosure of a lid on the fourth cooking mode unit **324** is a corresponding structure for the "openable [] cover means" terms as untimely. A5868-69; A5625. The ALJ noted that there is no record evidence underlying A&J's reliance on the fourth unit **324** as support for a broader construction of "openable [] cover means." A5625. Moreover, the

ALJ found that the disclosure of the fourth unit **324** was irrelevant to the construction of those terms because nowhere in the specification or the prosecution history is the fourth unit **324** linked to the claimed function of "selectively covering the [first or second] grill." A5625-27.

Applying these claim constructions, the ALJ determined that the Char-Broil 46374512 Grill does not infringe the asserted claims. Specifically, the ALJ found that the grill provides a gap below the openable first cover and, thus, the cover does not "include[]" an exhaust as the claims require. A5638. As for the remaining accused Char-Broil grills and OLP's Redesigned Grills, the ALJ determined that they do not satisfy the "openable [] cover means" limitations of claim 10 for the same reasons that they did not satisfy the "openable [] cover" limitations of claims 1 and 17. A5638-39; A5641.

Thereafter, A&J petitioned the Commission for review of the ALJ's Final ID. In particular, A&J petitioned for review of the ALJ's construction of "openable [] cover means" in claim 10; noninfringement of those limitations under that construction; and noninfringement by the Char-Broil 463724512 Grill. A5845-46.

### C.    The Commission's Final Determination

Relevant to this appeal, the Commission did not review the ALJ's construction of "openable [] cover means" in claim 10 and the ALJ's infringement

findings with respect to those terms, thereby adopting the ALJ's findings thereto, 19 C.F.R. § 210.42(h).  A6270-71.  The Commission reviewed the ALJ's constructions of "exhaust" and "exhaust means" and his finding of noninfringement by the Char-Broil 463724512 Grill.  *Id.*  The Commission requested additional briefing from the parties on these issues.  A6271-72.

On review, the Commission affirmed the ALJ's finding that the Char-Broil 463724512 Grill does not infringe any of the asserted claims because the accused grill's "openable first cover" and "openable first cover means" do not "include" the accused "exhaust."[5]  Consistent with its summary determination ruling, the Commission interpreted "includes" to require that an "exhaust" be located *on* the openable cover.  A32-33.  Respondents' expert, Dr. Stevick, testified that "a person of ordinary skill in the art would understand the gap or space to be located adjacent to and below . . . the openable cover and not *on* the openable cover."  A13119; A31; *see also* A8991:23-24 (Dr. Stevick testifying that the Char-Broil 463724512 Grill has "an opening that's between the body and the lid").  Char-Broil's Vice-President and Chief Engineer, Mr. Gafford, testified that the space is the "gap

---

[5] A&J's brief (at 37) misquotes the claim language in claim 10.  Claim 10 recites "the first cover means . . . includes at least one **exhaust**" and "the second cover means . . . includes at least one **exhaust means**."  A378 at 5:45-53 (emphasis added).  The Commission construed the "exhaust" term in claim 10 under section 112(f) because the claim language and prosecution history indicated that A&J inadvertently omitted the word "means" after the word "exhaust.  A23-26.

between the firebox and the lid." A8797:1-5; A31. The Commission noted that

the ALJ found Dr. Stevick's testimony more credible than the testimony of A&J's

expert, Mr. Thuma.[6] A31; A13116-20.

Furthermore, the Commission found that the Char-Broil 463724512 Grill

does not satisfy the "exhaust" and "exhaust means" terms in claim 10 as construed

by the Commission. A28. On review, the Commission found that the ALJ erred in

construing the "exhaust means" term in claim 10 to mean the same as the

"exhaust" term in claims 1 and 17. A22. Instead, the Commission found that the

"exhaust means" term should be governed by section 112(f). *Id.* The Commission

adopted A&J's proposed function for "exhaust means"—"to permit smoke, waste

and/or cooking vapors to pass out of each respective means for cooking food."

A26-27. The Commission noted that all parties agreed that the corresponding

structures described in the specification that perform the function is met by the

smokestacks (elements **112**, **122**, **212**, **222**, **312**, and **322**) shown in FIGS. 1-3 of

the patent in suit. A27. However, because A&J put forth no evidence showing

that the alleged exhaust means in the Char-Broil 463724512 Grill is identical to or

---

[6] Commissioner Schmidtlein found that the Char-Broil 463724512 Grill's first cover "includes" an exhaust as required by the claims. A34 n.12. Commissioner Schmidtlein weighed the evidence differently, relying upon Mr. Thuma's testimony in part to conclude that the grill infringes claims 1, 2, and 4-8 of the '712 patent. *Id.*

structurally equivalent to the smokestacks described in the patent, the Commission

determined that A&J failed to meet its burden of proof of infringement with

respect to this grill.[7]  A28-29.

_____

[7] The Commission found a violation of section 337 as to certain accused products not at issue in this appeal and issued a limited exclusion order and cease and desist orders related to those products.  A6591-92.  One of the subject respondents took an appeal, but moved to withdraw it voluntarily, and the Court granted that motion.  Order at 1-2, *Outdoor Direct Corp. v. USITC*, No. 2015-1751 (Fed. Cir. Dec. 22, 2015), ECF No. 43.  Accordingly, the Commission findings regarding a violation of section 337 are not at issue in the present appeal or any other.

## SUMMARY OF THE ARGUMENT

The Commission did exactly what A&J urges on appeal—give the terms "openable [first and second] cover[s]" in claims 1 and 17 their plain and ordinary meaning. In view of the record evidence, including the claim language, the specification, and the prosecution history, the Commission determined that the ordinary meaning of "openable [] cover" in the context of the '712 patent excludes any portion of the grill enclosure that is not openable. That construction does not exclude two-part covers as long as those parts are openable.

The intrinsic record is dispositive and is contrary to the expansive construction proposed by A&J. First, construction of the claim language is a straightforward application of commonly understood English words: the noun "cover" and the adjective that modifies it, "openable." Under the Commission's construction, which affords the words their plain meaning, the cover needs to be "openable" and does not include other portions of the grill enclosure that are not openable. Second, the patent specification comports with the plain meaning of "openable [] cover": all six openable covers disclosed in the patent specification do not include portions of the grill enclosure that are not openable. Third, the prosecution history conclusively establishes that the claimed covers exclude portions of the grill enclosure that are not openable. In order to overcome rejections over the prior art, A&J explained that the patent claims cover exhausts

27

located on the openable cover and not on other portions of the grill enclosure (as in the prior art).  A substantial portion of A&J's brief is spent trying to convince this Court to disregard the very statements it offered to the PTO to secure the '712 patent's allowance.

A&J's attempt to broaden the scope of the means-plus-function terms "openable [first and second] cover means" in claim 10 beyond what is disclosed in the specification must also be rejected.  The recited function of the "openable [] cover means" is undisputed to be "selectively cover[ing] the [first or second] grill." The patent specification discloses six openable covers (elements **111**, **121**, **211**, **221**, **311**, **321** in figures 1-3) for performing that function.  All of them are covers that open and do not include portions of the grill enclosure that do not open.  In using means-plus-function claim terminology, it was incumbent upon A&J to list or describe the corresponding structure in the patent specification.  Nothing in the specification clearly links or associates structures having fixed portions of the grill enclosure to the claimed function.  Moreover, A&J relied on the same distinctions over the prior art combination in arguing for the patentability of each of the independent claims 1, 10, and 17, and the Commission was correct to find that the disclaimer of fixed portions of a grill enclosure from the scope of claims 1 and 17 also applies with equal force to claim 10.

It is undisputed that the Commission's claim constructions are dispositive as to noninfringement of the seven accused products/product lines that the Commission found noninfringing during summary determination.  As to the Char-Broil 463724512 Grill that has an exhaust located below the openable first cover, the Commission found that a factual question existed and the Commission, weighing the evidence, found that this grill does not infringe the asserted claims.

# ARGUMENT

## I.    STANDARD OF REVIEW

On appeal, and in accordance with the Administrative Procedure Act, 5 U.S.C. § 706(2), this Court reviews the Commission's factual findings for substantial evidence, and the Commission's legal determinations *de novo*. *See*, *e.g.*, *Intel Corp. v. USITC*, 946 F.2d 821, 834 (Fed. Cir. 1991).

A&J challenges the Commission's construction of the terms "openable []  cover" and "openable [] cover means" in the asserted claims of the '712 patent. The ultimate question of the proper construction of the patent is a question of law that this Court reviews *de novo*. *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015).  Any factual determinations made in support of a claim construction are reviewed with deference. *Id.* at 838-39.

A&J also challenges the Commission's determination concerning the operation of an accused product.  Patent infringement is a question of fact that this Court reviews for substantial evidence. *Intel Corp.*, 946 F.2d at 832.  Under the substantial evidence test, the Court "must affirm a Commission determination if it is reasonable and supported by the record as a whole, even if some evidence detracts from the Commission's conclusion." *Spansion, Inc. v. ITC*, 629 F.3d 1331, 1344 (Fed. Cir. 2010) (quotation and citation omitted).  "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an

administrative agency's finding from being supported by substantial evidence."

*Norgren Inc. v. ITC*, 699 F.3d 1317, 1321 (Fed. Cir. 2012) (quotation and citation

omitted).

## II.  THE COMMISSION CORRECTLY CONSTRUED "OPENABLE [] COVER" IN CLAIMS 1 AND 17 TO EXCLUDE PORTIONS OF THE GRILL ENCLOSURE THAT ARE NOT OPENABLE

Claims 1 and 17 each include the limitations "openable first cover" and

"openable second cover."  On appeal, A&J argues (at 19) that these limitations

should be given their ordinary meaning, which includes "two-part covers that have

exhausts on movable and stationary parts of the cover."  A&J's proposed

construction is unsupportable, based on the plain meaning of the terms and the

prosecution history of the '712 patent.

### A.  The Plain and Ordinary Meaning of "Openable [] Cover" Excludes Portions of a Grill Enclosure That Are Not Openable

Claim terms are given their plain and ordinary meaning, namely "the

meaning that the term would have to a person of ordinary skill in the art in

question at the time of the invention."  *Phillips v. AWH Corp.*, 415 F.3d 1303,

1312-13 (Fed. Cir. 2005) (en banc) (citations omitted).  Nonetheless, in "some

cases, the ordinary meaning of claim language as understood by a person of skill in

the art may be readily apparent even to lay judges, and claim construction in such

cases involves little more than the application of the widely accepted meaning of

31

commonly understood words." *Id.* at 1314.   The Commission submits that this is precisely such a situation.

Each of the disputed claim limitations consist of a noun, "cover," and its modifier, "openable."   Under the Commission's construction, the cover needs to be openable.[8]   The Commission's interpretation is demanded by the plain language of these terms, and by English grammar and syntax.   *See Profectus Tech. LLC v. Huawei Techs. Co.*, No. 2015-1016, 2016 WL 3033148, at *4 (Fed. Cir. May 26, 2016) ("The term 'mountable' is a modifying word in the [disputed claim language, *e.g.*, 'mountable picture display' and 'mountable picture frame']. . . . The claim language is tailored to, characterizes, and delimits the claimed 'picture frame' and 'picture display.'"); *In re Hyatt*, 708 F.2d 712, 714 (Fed. Cir. 1983) ("A claim must be read in accordance with the precepts of English grammar.").

The intrinsic record is fully consistent with the Commission's construction. Each of the "openable cover[s]" described in the specification and identified in the drawings (*i.e.*, elements **111** and **121** in FIG. 1; elements **211** and **221** in FIG. 2; and elements **311** and **321** in FIG. 3) is openable and excludes those portions of the grill enclosure that are not openable.   A373-75; A376-77 at 2:31-38, 3:4-7, 3:36-

---

[8] A&J argues (at 20-21) that the Commission's construction is too narrow because covers can be two-part covers.   A&J misapprehends the issue because the Commission's construction does not preclude a cover from having multiple parts (like a bi-fold door), just that those parts must be openable as the claim language requires.

39.  A person of ordinary skill reading the patent would have no reason to believe that the claimed "openable [] cover" includes portions of the grill enclosure that do not open.  A&J is unable to point to any intrinsic evidence in support of its broader construction other than general statements in the specification regarding the exemplary nature of the disclosed embodiments.  A&J Br. at 21.  But those boilerplate statements fail to provide any public notice of the bounds of the claim term, much less support A&J's proposed construction.

A&J has not argued—nor can it—that the terms "openable" and "cover," have a special meaning in the barbecue arts.  Instead, A&J argues (at 22-25) that prior art patents use terms like "hood" and "cover," and from that tries to draw some inference as to the meaning of the terms "openable [] cover," which appears in none of the prior art.  That some patents may call for a grill with a hood, and that in those patents a portion of that hood may be openable, does not mean that the entire hood would or should be considered an "openable [] cover."

A&J also relies (at 20-21) upon its expert's testimony to support its interpretation of the "openable [] cover" terms.  But this Court has repeatedly explained that where an analysis of the intrinsic evidence resolves the issue, consideration of litigation-driven expert opinion is inappropriate.  *See Phillips*, 415 F.3d at 1318 (discussing how expert testimony "can suffer from bias that is not present in intrinsic evidence," is "not useful" if based on "conclusory, unsupported

assertions," and should be "discount[ed]" if "clearly at odds with . . . the written record of the patent") (citations omitted); *see also Bell Atl. Network Servs., Inc. v. Covad Commc'ns Grp., Inc.*, 262 F.3d 1258, 1269 (Fed. Cir. 2001); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1584 (Fed. Cir. 1996).

In any event, A&J's expert, Professor Shankwiler, admitted that he did not consider the specification or the prosecution history in forming his opinion on the meaning of "openable [] cover."  A8206:1-8207:14.  By contrast, Respondents' expert, Dr. Stevick, considered all of the intrinsic evidence in forming his opinion that one of ordinary skill in the art would exclude from the claim scope any portion of the grill enclosure that is not openable.  A10658-60.

## B.    The Prosecution History Refutes A&J's Proposed Construction

This Court has "held that a court should also consider the patent's prosecution history, if it is in evidence" to help construe disputed patent terms. *Phillips*, 415 F.3d at 1317 (quotation and citations omitted).  The prosecution history is important: "Like the specification, the prosecution history provides evidence of how the PTO and the inventor understood the patent. . . . Furthermore, like the specification, the prosecution history was created by the patentee in attempting to explain and obtain the patent." *Id.*  "A patentee may not proffer an interpretation for the purposes of litigation that would alter the indisputable public record consisting of the claims, the specification and the prosecution history, and

34

treat the claims as a nose of wax." *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1578 (Fed. Cir. 1995) (quotation and citation omitted). The prosecution history for the '712 patent conclusively establishes that the claimed "openable [] cover" excludes portions of the grill enclosure that are not openable.

### 1. The Commission Properly Used the Prosecution History to Support the Plain Meaning of the Disputed Claim Terms

At the outset of this prosecution history discussion, it bears noting what is at issue here and what is not. The Commission used the prosecution history (which will be discussed extensively below) to support the plain and ordinary meaning of the disputed claim terms as would be understood by a person of ordinary skill, and to show A&J's disavowal of the scope of its proposed construction, which conflicts with that plain and ordinary meaning. A&J incorrectly states (at 18-19, 29-30) that the Commission relied on the legal doctrines of claim amendment-based and argument-based prosecution history estoppel for its construction of "openable [] cover." A&J confuses the doctrine of prosecution history estoppel with the use of the prosecution history in construing claim terms.[9] The Commission explained in

---

[9] "Contrary to prosecution history estoppel which limits the doctrine of equivalents, *Warner-Jenkinson* [*Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 30 (1997)], prosecution disclaimer applies to the determination of literal infringement by excluding from the claim construction any claim scope that has been clearly and unmistakably disavowed during prosecution." *AccuScan, Inc. v. Xerox Corp.*, 76 F. App'x 290, 292 (Fed. Cir. 2003) (citing *Omega Eng'g, Inc. v Raytek Corp.*, 334 F.3d 1314, 1323-26 (Fed. Cir. 2003)). "[P]rosecution history estoppel does not

its Summary Determination Opinion that the parties' dispute about the role of prosecution history estoppel (including whether the estoppel was amendment-based or argument-based), was moot because A&J conceded that it asserted literal infringement of the asserted claims and not infringement under the doctrine of equivalents.  A3923 at n.2; A3004-05.  "[P]rosecution history estoppel does not apply to determining literal claim scope."  *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 327 F.3d 1364, 1367 (Fed. Cir. 2003).

> **2.    The "Openable [] Cover" and the "Cover Includes at Least One Exhaust" Limitations Were Added to the Claims to Distinguish Prior Art Grills with Exhausts Located on the Fixed Portion of the Grill Enclosure**

The application claims originally called for little more than a barbecue grill having two cooking units supported on a common structure.  More than six years into prosecution, and after several rounds of rejections, which are discussed in more detail in the Statement of the Case, *supra*, A&J added narrowing limitations that called for "openable [first and second] cover[s]" and that each "openable [] cover" "includes at least one exhaust."  A10193; A10196.  These limitations were made to traverse an obviousness rejection over McLane, Nemec, and Ganard.  A10203-05; A10207-08.  A&J explained that these amendments demonstrate that "Nemec and Ganard fail to teach or suggest . . . 'an openable first cover . . .

---

apply to claim construction, [or] literal infringement analysis . . . ."  *Senior Techs., Inc. v. R.F. Techs., Inc.*, 76 F. App'x 318, 320 (Fed. Cir. 2003).

includes at least one exhaust' . . . [and] 'an openable second cover . . . includes at least one exhaust . . . .'" A10205. Figure 1 of Nemec and Figure 1 of Ganard are reprinted below, side by side. In Nemec, the exhaust **48** is mounted to the fixed portion of the grill enclosure, as opposed to the door **34**. A10417 at 2:43-46, 2:51-55. Similarly, in Ganard, the exhaust **28** is mounted to the fixed portion of the grill enclosure, as opposed to the lid **20**. A10518 at 3:24-29, 3:35-39.



FIG.1

**A10416 (Nemec)**

Fig. 1

**A10513 (Ganard)**

A&J attempted to traverse the rejection by amending the claims to require that each claimed openable "cover includes at least one exhaust having a configuration based on the type of fuel used." A10193; A10196. In the next office action, the examiner rejected the claims for lack of written description under section 112 for the newly-added claim limitation. A10228. That same office

action also rejected the claims as obvious over McLane in view of Cox. A10229.

As discussed in more detail in the Statement of the Case, *supra*, the examiner

relied upon Cox to supply the claimed "openable [] cover." A10229-30; A10232.

Notably, neither cover **40** nor cover **38** in Cox, which the examiner found to

disclose the "openable [first and second] cover[s]," respectively, includes the

exhausts, which instead are located on portions of the grill enclosures **16**, **39** that

are not openable.[10] A10232; A10423-24 at 2:56-62, 3:20-29, 4:55-58. The

examiner was unconcerned by the fact that the exhausts (**18**, **22**, and **92** in Figure

1) in Cox were located on fixed portions of the grill rather than the cover because

having "the exhaust on another part of the unit other than the cover would not

make the exhaust nonfunctional." A10232-33.

As a result of the rejection, A&J filed a post-final rejection amendment.

A&J amended the drawings to include reference numerals identifying the

"openable [] cover" and "exhaust" elements of each cooking unit. A10283;

A10286-88. A&J also amended the specification to state expressly that elements

**111**, **121**, **211**, **221**, **311**, and **321** in Figures 1-3 depict "openable cover[s]" in the

---

[10] As shown in Cox, figures 2 and 3: (1) exhaust **92** is located on the fixed part of oven enclosure **16** surrounding the openable cover **40**; (2) exhaust **18** is located on the fixed part of smoker enclosure **39** surrounding the openable cover **38**; and (3) exhaust **22** is located on the fixed part of smoker **12** below the enclosure **39**. A10421-22; A10423-24 at 2:56-62, 3:20-29, 4:55-58.

patent.  A10276-77; A10284.  The amendment was entered, A10295, confining the

issues on appeal to the Board to section 103.

In its brief to the Board, A&J argued that the prior art combination of

McLane and Cox "at best it would result in **a barbecue grill with chimneys**

**connected to exit ports on the fixed portions of the oven/smoker enclosures**

**which are not openable (i.e., not covers)**."  A10321 (emphasis added).  A plain

reading of that statement shows that A&J considered portions of a grill enclosure

that are not openable as not part of the claimed cover.  And because the exhausts

would be located on the fixed portions of the grill enclosure instead of on the

openable cover, A&J argued that the prior art combination failed to teach or

suggest "wherein the [] cover includes at least one exhaust."  *Id.*

In that same brief to the Board, A&J also argued that another piece of prior

art, Oliver, taught away from including exhausts on the openable cover:

> [T]he teachings of Oliver support the contention that
> **including at least one exhaust on an openable cover**
> **should not be deemed a matter of rearrangement of**
> **parts that would not affect the functioning of the**
> **units.**  As Oliver clearly demonstrates, including
> exhausts on the cover does affect the functioning of the
> unit, and may not be desirable to one of skill in the art.

A10322 (emphasis added).  In response to the appeal brief, the examiner withdrew

the rejection.  A10347.

In sum, without fail, each time A&J referenced differences between the claimed invention and the prior art grills, it unambiguously distinguished the location of exhausts on the openable portion of a grill enclosure with the location of exhausts on fixed portions of a grill enclosure.

### 3. The Court Should Not, As A&J Urges, Ignore the Prosecution History

"The public notice function of a patent and its prosecution history requires that a patentee be held to what he declares during the prosecution of his patent." *Springs Window Fashions LP v. Novo Indus., L.P.*, 323 F.3d 989, 995 (Fed. Cir. 2003)).  Yet A&J urges the Court to ignore the prosecution history.  A&J's contention (at 31) that "the ITC's entire argument for disclaimer here rests on two words in a single sentence" is simply false as discussed extensively above, as well as in the Statement of the Case, *supra*.  Instead, it is about a patent that finally escaped eight years of prosecution as a result of repeated amendments and explanations of the prior art and claim scope that are consistent with the Commission's claim construction.  No person of ordinary skill reading the prosecution history would or could be put on notice that, notwithstanding the narrowing amendments and explanations offered by A&J to traverse section 103 rejections, years later in litigation, A&J would interpret the patent claims so broadly.  A10658-60.

A&J contends (at 28-29) that the prosecution history recited above merely clarified a claim term and did not define the invention over prior art.  To the contrary, in response to prior art rejections, A&J amended the claims to include the "openable [] cover" and the "cover includes at least one exhaust" limitations.  A claim amendment during prosecution of a patent "operates as a disclaimer" and "must be strictly construed against [the applicant]" and in favor of the public.[11] *Exhibit Supply Co. v. Ace Patents Corp.*, 315 U.S. 126, 137 (1942); *see Hockerson–Halberstadt, Inc. v. Avia Grp. Int'l, Inc.,* 222 F.3d 951, 957  (Fed. Cir. 2000) ("The prosecution history constitutes a public record of the patentee's representations concerning the scope and meaning of the claims, and competitors are entitled to rely on those representations when ascertaining the degree of lawful conduct . . . .").  By substituting one phrase for another to overcome a rejection of a proposed patent claim, the patentee "recognize[s] and emphasize[s] the difference between the two phrases and proclaim[s] his abandonment of all that is embraced in that difference."  *Exhibit Supply Co.*, 315 U.S. at 136-37.

---

[11] That A&J may have distinguished the prior art in multiple ways is immaterial.  *See Comput. Docking Station Corp. v. Dell, Inc*., 519 F.3d 1366, 1377 (Fed. Cir. 2008) ("[A] disavowal, if clear and unambiguous, can lie in a single distinction among many."); *Fenner Invs., Ltd. v. Cellco P'ship*, 778 F.3d 1320, 1325 (Fed. Cir. 2015) ("[T]he interested public has the right to rely on the inventor's statements made during prosecution, without attempting to decipher whether the examiner relied on them, or how much weight they were given.").

Beyond the claim amendment itself, A&J explained to the PTO exactly what the amendment meant, that the exhaust is on the openable cover, and not "on the fixed portions of the oven/smoker enclosures which are not openable (i.e., not covers)." A10321. Such emphasis on the claimed cover as both openable and including exhausts, especially to avoid prior art, will operate as a disclaimer of the otherwise broad scope of a claim term. *See SafeTCare Mfg., Inc. v. Tele-Made, Inc.*, 497 F.3d 1262, 1270 (Fed. Cir. 2007) (finding disclaimer when a feature was repeatedly emphasized in contradiction to another and that particular "attribute of the invention [was] important in distinguishing the invention over the prior art"); *see also*, *e.g.*, *Comput. Docking Station Corp.*, 519 F.3d at 1375-76; *Alloc, Inc. v. ITC*, 342 F.3d 1361, 1372 (Fed. Cir. 2003). Accordingly, the Commission properly construed the "openable [] covers" limitations of asserted claims 1 and 17.[12]

---

[12] A&J argues (at 36) that if its construction is adopted on appeal, the case should be remanded to the Commission to determine if certain accused grills infringe the asserted claims under the Court's claim construction. A&J ignores the fact that if the case is remanded for purposes of infringement, it must also be remanded for purposes of invalidity, for "the claims must be interpreted and given the same meaning for purposes of both validity and infringement analyses." *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001). As demonstrated by the figures of Nemec, Ganard, and Cox, all reprinted above, the prior art reads more closely upon the asserted claims when the claims are interpreted as broadly as A&J now contends.

## III.    THE COMMISSION CORRECTLY CONSTRUED "OPENABLE [] COVER MEANS" TO BE LIMITED TO THE STRUCTURES DISCLOSED IN THE PATENT FOR SELECTIVELY COVERING THE FIRST OR SECOND GRILL

This Court has repeatedly held that it looks to the specification and prosecution history to identify the corresponding structure for a means-plus-function claim limitation. *See B. Braun Med. Inc., v. Abbott Labs.*, 124 F.3d 1419, 1424 (Fed. Cir. 1997) ("[S]tructure disclosed in the specification is 'corresponding' structure only if the specification or prosecution history clearly links or associates that structure to the function recited in the claim."); *Med. Instrumentation & Diagnostics Corp. v. Elekta AB*, 344 F.3d 1205, 1210 (Fed. Cir. 2003) (same). "This duty to link or associate structure to function is the *quid pro quo* for the convenience of employing" means-plus-function claim language. *B. Braun*, 124 F.3d at 1424 (citation omitted).

The Commission's determination that "openable [] cover means" in claim 10 are means-plus-function terms pursuant to section 112(f) is undisputed on appeal. A3926; A&J Br. at 37-38.   Also undisputed is that the recited function for these limitations is "selectively covering the [first or second] grill." *Id.*   All that is at issue is the identification of the corresponding structures for performing that function.   The only structure disclosed in the patent for performing the recited function is, as the Commission, found, "a cover or a lid that excludes any portion of the grill enclosure that is not openable (*i.e.*, fixed)," specifically the "openable

cover[s]" **111**, **121**, **211**, **221**, **311**, and **321** in Figures 1-3.  A5621; A373-75; A376-77 at 2:33-37, 3:5-7, 3:37-39.

In its brief, A&J argues (at 38) that the Commission's construction is erroneous for three reasons: (1) the Commission determined that the "fourth cooking mode unit **324**" is not a corresponding structure for the "openable [] cover means" limitations; (2) the Commission failed to apply a heightened legal standard allegedly required to surrender structures for means-plus-function claims; and (3) the Commission found that the disclaimer limiting the scope of claims 1 and 17 also limits the scope of claim 10.  We address these arguments below.

## A.    A&J Told the PTO Precisely What the Corresponding Structures for "Openable [] Cover Means" Are and That Representation Is at Odds with A&J's Argument on Appeal

Claim 10 calls for an "openable first cover means for selectively covering the first grill," and an "openable second cover means for selectively covering the second grill."  A378 at 5:44-45, 50-51.  A&J wishes to construe "openable [] cover means" in claim 10 broadly for the same reason as it does for claims 1 and 17—to expand the scope of infringement to include grills that have exhausts on components other than the cover that opens.

Claim 10 of the '712 patent was originally application claim 32.  As discussed in the Statement of the Case, *supra*, in response to a section 112, second paragraph, rejection, A&J identified the lids on cooking units **110** (Fig. 1) and **210**

(Fig. 2) as corresponding structures for "first cover means" and the lids on cooking units **210** (Fig. 1) and **220** (Fig. 2) as corresponding structures for the "second cover means" limitations.  A10200-02.  In response to further rejections by the examiner, A&J amended the drawings to identify the openable covers and their exhausts, and amended the specification to link the structures: openable covers **111** and **121** (FIG. 1); openable covers **211** and **221** (FIG. 2); and openable covers **311** and **321** (FIG. 3), with the "openable [] cover means" terms.  A10276-77; A10283; A10286-88.  When A&J again had the opportunity to identify the corresponding structures, it argued in its appeal brief to the Board that the "openable first cover means" corresponded to "Features **111**, **211**, and **311**" and that the "openable second cover means" corresponded to "Features **121**, **221**, and **321**."  A10310. These covers are the only possible section 112(f) structures corresponding to "openable [] cover means" because they are the only structures identified in the specification, and the only structures clearly linked with the claimed function.  *See B. Braun*, 124 F.3d at 1424.

A&J argues (at 53) that the lid on the fourth cooking mode unit **324** is a disclosed structure that "could be used as the openable cover means."[13]  The

_____

[13] The ALJ found this argument waived because A&J did not identify the fourth unit **324** as a possible corresponding structure during claim construction proceedings even though it argued that claim 10 should be construed under section 112(f) as early as December 2013, when the parties exchanged proposed claim

claimed function of "openable [] cover means" is not simply to cover a grill as

A&J contends.  *See* A&J Br. at 38 ("the ALJ incorrectly failed to consider a second

structure that 'selectively covers **the grill** means'") (emphasis added); *accord id.* at

55, 56, 57.  Rather, the corresponding structure must "selectively cover[] the [first

or second] grill."  A3926.  Nowhere does the '712 patent specification associate

the fourth unit **324**, which can operate as a firebox, A377 at 3:45-52, with the first

or second grill.  That distinction is buttressed by claim 12, which depends from

claim 10 and expressly distinguishes the "firebox means" from "the first [and

second] means for cooking."  A378 at 6:4-10.

There is simply no basis for a person of ordinary skill in the art reading the

patent and its prosecution history to believe that the fourth unit **324** has anything to

do with the first or second grill.  A&J's reliance (at 56) upon the testimony of a

sales manager of a Chinese supplier (Fudeer sales manager Wei Yang Xin) that

A&J contracted to manufacture some of its grills is unhelpful as it merely points

out that the fourth unit **324** may operate as a separate grill, which is not the claimed

---

constructions.  A5625; A6241-42.  Moreover, the ALJ found that A&J's experts
did not rely upon fourth unit **324** as support for their construction of "openable []
cover means."  A5625.  The ALJ, thus, found that there is no record evidence
underlying A&J's reliance on fourth unit **324** as support for a broader construction
of "openable [] cover means."  *Id.*

first or second grill.[14]  Similarly, A&J's attempt (at 56-57) to rely upon a Char-Broil Product Guide is misplaced as that document cannot provide structure missing from the patent specification and, in any event, it has nothing to do with the claimed function.  *Cf. Blackboard, Inc. v. Desire2Learn, Inc.*, 574 F.3d 1371, 1385 (Fed. Cir. 2009) ("A patentee cannot avoid providing specificity as to structure simply because someone of ordinary skill in the art would be able to devise a means to perform the claimed function.").

Even if, however, the fourth unit **324** was a described structure for selectively covering the first or second grill, it does not follow that the patent's description supports the claim construction A&J urges on appeal.  The "openable cover means" would still be the openable door that provides access to the firebox. Neither the patent specification nor the drawings suggest that a person of ordinary skill at the time of the invention would interpret the unopenable portion of the firebox enclosure as constituting part of the "openable [] cover means" described and claimed in the patent.

---

[14] Nor did A&J demonstrate that Mr. Wei is a person of ordinary skill, that he understood the patent, or that he was competent to opine on the scope of the claim language with regard to the understanding of a person of ordinary skill at the time of the invention.

### B.    A&J Cannot Recapture Through Equivalents What It Disavowed in Prosecution

The claim scope of a means-plus-function claim limitation is limited to the corresponding structure disclosed in the specification and equivalents thereof.  *See Valmont Indus., Inc. v. Reinke Mfg. Co.*, 983 F.2d 1039, 1042 (Fed. Cir. 1993). While A&J's brief is unclear, the Commission understands A&J to be arguing that the accused covers in this case, in which a portion opens—but that portion lacks the claimed "exhaust" or "exhaust means" of claim 10—are equivalent to the structures disclosed in the patent.  As noted above, A&J failed to demonstrate that a person of ordinary skill would understand the fixed portion of a grill enclosure to constitute part of the "openable [] cover means" in claim 10.  A&J suggests (at 54-55) that the issue is one-piece versus two-piece covers.  But that characterization misses the mark.  What A&J is trying to do instead is to argue that "openable [] cover means" includes portions of the grill enclosure that are not openable.  Even if the Court, however, viewed the legal question through the erroneous lens offered by A&J, A&J's arguments fail because the prosecution history disavows the scope of claim 10 that A&J now seeks.

A&J argues (at 51) that there is a "different and higher standard for estoppel with respect to means-plus-function claim language" because the ability to draft patent claims under section 112(f) is a statutory right given patentees.  There is no legal support for A&J's argument.  This Court has repeatedly explained that

prosecution history disclaimer applies to limit the scope of equivalent structures for means-plus-function claims in substantially the same manner that prosecution history estoppel bars the application of the doctrine of equivalents. *See Regents of the Univ. of Minn. v. AGA Med. Corp.*, 717 F.3d 929, 942 (Fed. Cir. 2013) ("Our law makes clear that '[j]ust as prosecution history estoppel may act to estop an equivalence argument under the doctrine of equivalents, positions taken before the PTO may bar an inconsistent position on claim construction under § 112, ¶ 6.'"), *quoting Alpex Comput. Corp. v. Nintendo Co.*, 102 F.3d 1214, 1221 (Fed. Cir. 1996); *see also J&M Corp. v. Harley-Davidson, Inc.*, 269 F.3d 1360, 1367-68 (Fed. Cir. 2001) ("The prosecution history conclusively establishes that the single clamp structure of the accused devices cannot be an equivalent of the dual clamp embodiment disclosed in the [asserted patent]."). In the present case, A&J amended its claims to include the terms "openable [] cover means" and explained to the examiner that structures with exhausts on fixed portions of the grill enclosure are not equivalent.

### 1. In Order to Secure the Allowance of Claim 10, A&J Disavowed the Equivalent Structure That It Now Seeks to Recapture

The Commission adopted the ALJ's finding that the same prosecution history disclaimer of fixed portions of a grill enclosure from the scope of "openable [] cover" in claims 1 and 17 also applies with equal force to claim 10 as

additional support for its determination of the corresponding structures for the

"openable [] cover means" terms.  A5622-25.  As discussed in the Statement of

Facts and in connection with claims 1 and 17 above, A&J amended application

claim 32 (issued as claim 10) to overcome prior art grills with exhausts located on

the fixed portions of the grill enclosures.  In particular, during prosecution, A&J:

- Amended application claim 32 to recite "openable [] cover means" and "cover includes at least one exhaust" means, A10194-95;

- Identified covers **111**, **121**, **211**, **221**, **311**, and **321** (Figures 1-3) as the corresponding structures for "openable [] cover means," A10200-02; A10276-77; A10310;

- Stated that the prior art combination of McLane and Cox "at best it would result in a **barbecue grill with chimneys connected to exit ports on the fixed portions of the oven/smoker enclosures which are not openable (i.e., not covers)**," A10321 (emphasis added); and

- Stated that another prior art reference, Oliver, taught away from including exhausts on the openable cover because Oliver "support[s] the contention that **including at least one exhaust on an openable cover should not be deemed a matter of rearrangement of parts that would not affect the functioning of the units**," A10322 (emphasis added).

The claim amendments and statements constitute clear disavowal of claim scope.

Moreover, they are completely at odds with A&J's representation on appeal that

having the exhaust on the fixed portion of the enclosure (as in the accused grills) is

insubstantially different from the disclosed openable covers that include exhausts.

### 2.    The PTO Rules and Regulations Do Not Preclude Finding a Disavowal for Claim 10

A&J relies heavily on 37 C.F.R. § 41.37 and on section 1205.02 of the

Manual of Patent Examining Procedure ("MPEP") to support its position that an

argument presented under one heading of a brief to the Board is inoculated from

damaging representations made under another heading.[15]  A&J Br. 40-47.  As

discussed extensively below, A&J made statements of disavowal for claim 10, and

not merely for claims 1 and 17.  Moreover, even if A&J's statements of disavowal

were presented only in connection with claims 1 and 17—and they were not—the

prosecution history would still apply to claim 10.

A&J misapprehends patent office practice.  The cited Rule of Practice does

not exist "so that the applicant can purposely preserve arguments for appeal."  *Id.*

at 41.  Rather, that Rule exists to help the Board.  The Rule provides that if an

applicant groups claims together, the Board has the right to demonstrate the

unpatentability of only one of the grouped claims to demonstrate the

unpatentability of the entire group.  37 C.F.R. § 41.37(c)(1)(iv) (2012) ("When

multiple claims subject to the same ground of rejection are argued as a group or

subgroup by appellant, the Board may select a single claim from the group or

---

[15] The MPEP in force at the time of A&J's brief to the Board was the ninth revision of the eighth edition.  MPEP § 1205.02, at 1200-14 (8th ed. rev. 9, Aug. 2012).  As A&J notes (at 46), the MPEP does not have the force and effect of law, and therefore cannot confer legal rights.

subgroup and may decide the appeal as to the ground of rejection with respect to the group or subgroup on the basis of the selected claim alone."). While the applicant can attempt to argue claims separately, nothing in the Rule precludes disavowals made in connection with one claim to be applied to other claims equally susceptible to the disavowal. Moreover, as the PTO explains, it is not enough merely to state that claims are different, the applicant instead must explain why. *Id.* ("A statement which merely points out what a claim recites will not be considered an argument for separate patentability of the claim."). Headings alone are thus not enough.

A&J also misapprehends the cases it cites in its brief (at 42-43) in support of its interpretation of the effect of headings. *In re McDaniel*, 293 F.3d 1379, 1382-85 (Fed. Cir. 2002), addresses when the Board can select a single claim and ignore others in making a finding of unpatentability. Likewise, *In re Watts*, 354 F.3d 1362, 1369 (Fed. Cir. 2004), merely deals with whether separate (and, ordinarily, additional) arguments of patentability must be considered by the PTO. *In re Van Geuns*, 988 F.2d 1181, 1186 (Fed. Cir. 1993), involves an interference applying a different rule of practice. It, likewise, merely deals with the Board's ability to ignore additional patentability arguments regarding claims. *Id.* Nothing in any of these cases precludes the Board—much less a person of ordinary skill reading the entire prosecution history to establish the metes and bounds of the claims—from

52

considering arguments made in connection with one claim or group of claims in connection with another, when the claim language makes that connection appropriate.[16]

### 3.    The Disavowal Is Effective as to Claim 10, and Not Merely Claims 1 and 17

During prosecution, A&J repeatedly relied on the same distinctions over the prior art in arguing for the patentability of each of the independent claims 1, 10, and 17.  *See* A10203-07; A10284-85; A10315-25.  Although A&J now contends (at 44-45) that it intended separately to argue for the patentability of application claims 22 (which issued as claim 1) and 32 (which issued as claim 10) because claim 32 is a means-plus-function claim,[17] A&J did not, in its appeal brief to the

--------

[16] *See, e.g.*, *Baldwin Graphics Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1346 (Fed. Cir. 2008) ("An ordinary skilled artisan would simply not construe similar terminology so differently from one usage to another."); *see also Paragon Sols., LLC v. Timex Corp.*, 566 F.3d 1075, 1087 (Fed. Cir. 2009) (holding that the claim term "display unit" should be interpreted consistently with the claim term "data acquisition unit" because of the "presumption that the same terms appearing in different portions of the claims should be given the same meaning unless it is clear from the specification and prosecution history that the terms have different meanings at different portions of the claims.") (quotation and citation omitted); *CVI/Beta Ventures, Inc. v. Tura LP*, 112 F.3d 1146, 1159 (Fed. Cir. 1997) ("[W]e are obliged to construe the term 'elasticity' consistently throughout the claims.").

[17] An applicant's subjective intent is irrelevant.  *Seachange Int'l, Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1375 (Fed. Cir. 2005) ("Seachange inappropriately emphasizes Applicant's subjective intent.  Courts must 'view [] the prosecution history not for . . . applicant's subjective intent, but as an official record that is created in the knowledge that its audience is not only the patent examining officials

Board, seek different constructions for those two claims or identify how any differences mattered for purposes of the prior art rejection. Nor, in its brief before this Court has A&J pointed out any meaningful differences in its arguments as to the patentability of application claims 22 and 32. Indeed, there was no reason for A&J to present distinct arguments since both independent claims shared a common ground of rejection, *i.e.*, a rejection for obviousness over McLane in view of Cox. A10312.

A&J's contention that the Commission conflated the arguments of the patentability of claims 22 and 32 elevates form over substance. In its appeal brief to the Board, A&J did not present a challenge to claim 32 separate from its claim 22 challenge. This common treatment is evident beginning with A&J's summary of its challenge to the examiner's rejection of all independent claims:

> Appellant respectfully traverses the rejection and submits that the Office has not met its burden of establishing a *prima facie* case of obviousness at least because **(1)** the combination of . . . McLane with the oven/smoker enclosures and chimneys described in Cox would render McLane unsatisfactory for its intended purpose **with regard to claims 22, 32 and 40**, and **(2)** the combination of McLane and Cox fails to teach or suggest each and every feature recited in **claims 22, 32 and 40** in light of the prior art of record which teaches away from combining the features of each of **claims 22, 32 and 40**.

and the applicant, but the interested public.'") (quoting *Biogen, Inc. v. Berlex Labs., Inc.*, 318 F.3d 1132, 1139 (Fed. Cir. 2003)).

A10316 (emphasis added).  Thus, A&J grouped all of the independent claims

together and made the same two arguments for the group of claims.  *See generally*

*Dig. Biometrics, Inc. v. Identix, Inc.*, 149 F.3d 1335, 1347 (Fed. Cir. 1998)

(holding that a general statement distinguishing prior art applied to all claims

linked to the statement).

A&J then expanded on the two arguments under a separate subheading for

application claim 22.  A10316-23.  With respect to the second argument, A&J

claimed that even if McLane and Cox could be combined, as suggested by the

examiner, the combination failed to teach or suggest "wherein the [] cover includes

at least one exhaust" because "at best it would result in a barbecue grill with

chimneys connected to exit ports on the fixed portions of the oven/smoker

enclosures which are not openable (i.e., not covers)."  A10321.  As part of its

argument, A&J claimed that prior art references, such as Oliver, taught away from

including exhausts on its covers.  A10321-23.

Although A&J included separate subheadings for each independent claim in

its brief to the Board, under the subheading for application claim 32, A&J merely

relied on the same arguments it had made for application claim 22.

> Appellant respectfully submits that the combination of
> McLane and Cox fails to render obvious the features of
> **claim 32 for similar reasons to those discussed above
> with reference to claim 22**. Specifically, the cited
> references fail to render obvious the features of claim 32
> at least because **(1)** the combination of . . . McLane with

> the oven/smoker enclosures and chimneys described in
> Cox would render McLane unsatisfactory for its intended
> purpose with regard to claim 32, and (**2**) even if the
> references could be combined as suggested, the
> combination of McLane and Cox fails to teach or suggest
> "wherein the first cover means . . . includes at least one
> exhaust" and "wherein the second cover means . . .
> includes at least one exhaust means," as recited in claim
> 32, in light of Oliver which teaches away from
> combining the features of claim 32.

A10323-24 (emphasis added).  A&J did not provide a separate reason for its

contention that these features would be lacking because application claim 32

recites means-plus-function limitations.  Instead, A&J relied on the sole reasons

given with regard to application claim 22, including that McLane and Cox would

result in exhausts connected to fixed portions of a grill enclosure, which are not

openable and, therefore, not covers.

Similarly, A&J tied its arguments for patentability of application claim 40

(which issued as claim 17) to application claims 22 and 32.  Though A&J argued

for the patentability of application claim 40 under its own separate subheading,

other than the differing claim number and the omission of "means," the text of

A&J's argument for application claim 40 was identical to the argument made for

application claim 32.  A10324-25.  The Commission found the disclaimer that

applied to application claim 22 also applied to application claim 40.[18]  A5622-25.

Further, in its discussion as to the patentability of the dependent claims, A&J

affirmatively linked its interpretation of the "openable [] cover" terms in claim 22

subject to the disclaimer with the "openable [] cover means" term in claim 32.

> Specifically, the cited references fail to render obvious
> the features of claims 22 and 32 at least because the
> combination of McLane, Cox and Ducate fails to teach or
> suggest "wherein the first cover includes at least one
> exhaust" and "wherein the second cover includes at least
> one exhaust," as recited in claim 22, and as similarly
> recited in claim 32.

A10327-28.

In view of A&J's arguments in its appeal brief to the Board, the examiner

allowed application claims 22, 32, and 40 for the same reasons.  A10347.  The

examiner's reasons for allowance make clear that he regarded the patentability of

the claims to rise and fall together.  *Id.*  A competitor reading the prosecution

history would not and could not be put on notice of the arguments A&J advances

on appeal.  *See generally Seachange Int'l, Inc.*, 413 F.3d at 1372 ("The prosecution

history constitutes a public record of the patentee's representations concerning the

---

[18] Indeed, A&J has never objected to the Commission's determination to
apply the prosecution disclaimer statements from application claim 22 (issued as
claim 1) in connection with the construction of application claim 40 (issued as
claim 17).

scope and meaning of the claims, and competitors are entitled to rely on those representations when ascertaining the degree of lawful conduct.") (quotation and citation omitted).

## IV. SUBSTANTIAL EVIDENCE SUPPORTS THE COMMISSION'S FINDING OF NONINFRINGEMENT BY THE CHAR-BROIL 463724512 GRILL

A&J alleges that the space between the Char-Broil 463724512 Grill's gas cover and the body of the gas grill meets the "first cover includes at least one exhaust" limitations in claims 1 and 17 and the "first cover means . . . includes at least one exhaust [means]" limitation in claim 10.  The Commission found otherwise.  Claims 1, 10, and 17 are not infringed because the accused grill's "openable first cover" and "first cover means" do not "include[]" the accused "exhaust."  A30-34.  Rather, the exhaust is located below the accused grill's gas cover.  A31-32.  Accordingly, the Commission determined that the accused grill does not infringe any claim of the '712 patent.  A33-34.  In addition, the Commission also found that claim 10 is not infringed because A&J did not demonstrate that the accused "exhaust[s]" are the same as or structurally equivalent to the patent's corresponding structure for the "exhaust means," namely the smokestacks shown in figures 1-3.  A28-29.  A&J's request (at 59-63) that this Court reverse the Commission's decision should be denied for the following reasons.

First, A&J misstates this Court's standard for overturning the Commission's finding of no infringement. A&J argues (at 61-63) that there is substantial evidence that the Char-Broil 463724512 Grill's gas cover "includes" an exhaust. In particular, A&J cites (at 60-61) with approval Commissioner Schmidtlein's dissent. However, the relevant inquiry is not whether there is substantial evidence to support A&J's alleged infringement claim, but rather whether there is substantial evidence to support the Commission's finding of no infringement. *Intel Corp.*, 946 F.2d at 832. Under the substantial evidence test, the Court "must affirm a Commission determination if it is reasonable and supported by the record as a whole, even if some evidence detracts from the Commission's conclusion." *Spansion*, 629 F.3d at 1344 (quotation and citation omitted).

Second, under the proper standard of review, the Commission's finding of noninfringement as to claims 1, 10, and 17 is supported by substantial evidence. The Commission found no error in the ALJ's application of the Commission's claim constructions, his analysis of the record evidence, and his credibility determinations of the witnesses at the evidentiary hearing. A31-32. The ALJ relied on Dr. Stevick's testimony that "a person of ordinary skill in the art would understand the gap or space to be located adjacent to and below . . . the openable cover and not *on* the openable cover." A31; A5638; A13119. A&J's expert, Mr. Thuma, confirmed at the hearing that the exhaust is the "space there between the

openable lid and the grill body." A8341:3-8; A31. Nonetheless, Mr. Thuma concluded that the accused grill has "a large channel exhaust appearing on the cover of the gas unit." A9688. Neither the ALJ nor the Commission found Mr. Thuma's testimony credible. A5638; A31-32. A&J asks this Court to become the fact finder and to reweigh the testimonies of witnesses, including Dr. Stevick and Mr. Thuma. But this Court does not reweigh the evidence or the Commission's credibility determinations. *Nutrinova Nutrition Specialties & Food Ingredients GmbH v. ITC*, 224 F.3d 1356, 1359 (Fed. Cir. 2000).

Third, with respect to claim 10 (as well as claims 11-16, which depend from claim 10), the Commission also found an additional basis for noninfringement by the Char-Broil 463724512 Grill. More specifically, the Commission found that the accused grill does not infringe the claim because A&J did not demonstrate—as part of its burden of proving infringement by a preponderance of the evidence— that the channel opening and butterfly vents in the grill are identical to or structural equivalents of the smokestacks disclosed in the '712 patent.[19] A28-29. On appeal,

---

[19] A&J (at 61-62) discusses the testimony of Messrs. Gafford and Thuma regarding whether the space between the lid and the grill body of the the Char-Broil 463724512 Grill meets the "exhaust" limitations in claims 1 and 17. That issue however is not disputed by the Commission on appeal. The Commission found that the accused grill meets the "exhaust" limitations in claims 1 and 17, but not the "exhaust [means]" limitations in claim 10 (which as discussed earlier is narrower than the "exhaust" of claims 1 and 17 because of the corresponding structures identified in the patent for performing the claimed function). A28-29.

A&J does not challenge the Commission's construction of "exhaust and "exhaust means" in claim 10, and the Commission's noninfringement findings related to those limitations.  Thus, A&J has waived any argument that the Char-Broil grill infringes claims 10-16.  *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319 (Fed. Cir. 2006).

## CONCLUSION

For the foregoing reasons, the Commission respectfully requests that its final determination be affirmed.

Respectfully Submitted,

_/s/ Cathy Chen_____
DOMINIC L. BIANCHI
General Counsel

SIDNEY A. ROSENZWEIG
Acting Assistant General Counsel

CATHY CHEN
Attorney-Advisor
Office of the General Counsel
U.S. International Trade Commission
500 E Street, SW, Suite 707
(202) 205-2392

Date: June 24, 2016

## CERTIFICATE OF SERVICE

I certify that I served a copy of the attached **BRIEF OF APPELLEE**

**UNITED STATES INTERNATIONAL TRADE COMMISSION** on counsel of

record on June 24, 2016, by the Court's CM/ECF system, which will send notice of

such filing to all registered CM/ECF users.


/s/ CATHY CHEN
Cathy Chen
Attorney Advisor
U.S. International Trade Commission
500 E Street, SW
Washington, DC 20436
tel. (202) 205-2392
fax (202) 205-3111
cathy.chen@usitc.gov

Dated:  June 24, 2016

**CERTIFICATE OF COMPLIANCE**
**PURSUANT TO FED. R. APP. P. 32(a)(7)(C)**

Pursuant to Fed. R. App. P. 32(a)(7)(B), I hereby certify that the attached

brief contains 13,975 words, according to the word-count function of the word-

processing system used to prepare the brief (Microsoft Word 2010).


/s/ CATHY CHEN
Cathy Chen


Dated:  June 24, 2016