No. 2015-1494

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

A&J MANUFACTURING, LLC, A&J MANUFACTURING, INC.,

Appellants

v.

UNITED STATES INTERNATIONAL TRADE COMMISSION,

Appellee

CHAR-BROIL, LLC, OUTDOOR LEISURE PRODUCTS, INC.,

Intervenors

OUTDOOR DIRECT CORPORATION,

Third-Party

Appeal from the United States International Trade Commission in *Certain Multiple Mode Outdoor Grills and Parts Thereof*, Inv. No. 337-TA-895

**CORRECTED JOINT BRIEF OF INTERVENORS
CHAR-BROIL, LLC AND OUTDOOR LEISURE PRODUCTS, INC.**

JOHN W. HARBIN
WARREN J. THOMAS
MEUNIER CARLIN & CURFMAN LLC
999 Peachtree Street, NE
Suite 1300
Atlanta, Georgia 30309
Telephone: (404) 645-7700
Facsimile: (404) 645-7707
*Counsel for Char-Broil, LLC*

MICHAEL R. DZWONCZYK
BRIAN K. SHELTON
MARK BOLAND
SUGHRUE MION, PLLC
2100 Pennsylvania Ave. NW
Washington, DC 20037
Telephone: (202) 293-7060
Facsimile : (202) 293-7860
*Counsel for Outdoor Leisure Products, Inc.*

## **CERTIFICATE OF INTEREST**

Counsel for Intervenor Char-Broil, LLC certifies the following:

  1.    The full name of every party represented by me is:
           Char-Broil, LLC

  2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:
           Char-Broil, LLC

  3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party represented by me are:
           W.C. Bradley Co. is the parent company of Char-Broil, LLC. W.C. Bradley Co. is a privately owned company.

  4.    The names of all law firms and the partners or associates that appeared for the party represented by me in the trial court or agency or are expected to appear in this court are:
           Meunier Carlin & Curfman— John W. Harbin; Warren J. Thomas; King & Spalding – Jeffrey M. Telep, Thomas C. Lundin, Jr., Adam M. Conrad; Ramtin Taheri, Taryn K. Williams, and Sajid Saleem

June 24, 2016                                  /s/ *John W. Harbin*
Date                                                John W. Harbin

Counsel for Intervenor Outdoor Leisure Products, Inc. certifies the following:

  1.  The full name of every party represented by me is:
           Outdoor Leisure Products, Inc.

  2.  The name of the real party in interest represented by me is:
           Outdoor Leisure Products, Inc.

  3.  All parent corporations and any publicly held companies that own 10% percent or more of the stock of the party represented by me are:

i

There is no parent corporation of Outdoor Leisure Products, Inc. Outdoor Leisure Products, Inc. is a privately held company.

4. The names of all law firms and the partners or associates that appeared for the party represented by me in the trial court or agency or are expected to appear in this court are:

Sughrue Mion, PLLC - Michael R. Dzwonczyk, Mark Boland, and Brian K. Shelton

_June 24, 2016_
Date

_/s/ Brian K. Shelton_
Brian K. Shelton

# **TABLE OF CONTENTS**

**Page**

CERTIFICATE OF INTEREST   i

TABLE OF CONTENTS   iii

TABLE OF AUTHORITIES   v

STATEMENT OF RELATED CASES   viii

STATEMENT OF THE ISSUES   1

I.   STATEMENT OF THE CASE   2

II.   SUMMARY OF THE ARGUMENT   4

III.   ARGUMENT   8

    A.   Standard of Review   8

    B.   The Commission Correctly Construed Claims 1 and 17 to
Require That the Recited Exhausts Must Be Located on the "Openable
[] Cover"   8

       1.   Relevant Claim Construction Standards   9

       2.   The Commission's Interpretation Is Consistent With the
Plain Meaning of the Claim as a Whole   10

       3.   A&J's Amendments and Statements In the File History
Confirm the Commission's Construction   14

    C.   The Commission Correctly Construed Claim 10 to Require
That the Recited Exhausts Must Be Located on the "Openable
[] Cover Means"   17

    D.   The Commission Correctly Determined That the Char-Broil
4512 Grill Does Not Infringe Under the Commission's Interpretation of
"Openable [] Cover"   19

1. A&J Waived Appeal of Noninfringement of Claim 10
as to All Accused Products                                    19

2. Substantial Evidence Supports the Commission's Finding
That the Char-Broil 4512 Grill Does Not Infringe            20

E.  The Commission's Determination That None of the Grills
at Issue Infringe Claims 1 or 17 Also May Be Affirmed
Because the Char-Broil and OLP Grills Do Not Include the Claimed
"Exhaust"                                                      22

1. The Proper Construction of the Term "Exhaust" in Claims
1 and 17 is Limited to Smokestack-Like Structures          24

2. Char-Broil Does Not Infringe Claims 1 or 17 Under
the Proper Construction of "Exhaust"                       35

3. None of the OLP Grills Infringe Claims 1 or 17 Under
the Proper Construction of "Exhaust"                       39

4. At Minimum, the Char-Broil 4512 Grill and the New Char-Broil
Grill Do Not Infringe Because the Scope of "Exhaust" Must Be
Less Than the Earlier Claimed
"Opening"                                                   41

IV.  CONCLUSION                                                   42

CERTIFICATE OF COMPLIANCE                                         44

CERTIFICATE OF SERVICE                                            45

# TABLE OF AUTHORITIES

## CASES

*Andersen Corp. v. Fiber Composites, LLC*,
    474 F.3d 1361 (Fed. Cir. 2007) .......................................................... 16

*Biogen Idec, Inc. v. Glaxosmithkline LLC*,
    713 F.3d 1090 (Fed. Cir. 2013) ........................................................... 9

*Digital Biometrics, Inc. v. Identix, Inc.*,
    149 F.3d 1335 (Fed. Cir. 1998) .................................................... 31, 34

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
    535 U.S. 722 (2002)......................................................................... 9-10

*Glaxo Group Ltd. v. TorPharm, Inc.*,
    153 F.3d 1366 (Fed. Cir. 1998) ........................................................... 8

*Hockerson-Halberstadt, Inc. v. Avia Group Int'l, Inc.*,
    222 F.3d 951 (Fed. Cir. 2000) ......................................................... 9-10

*Intergraph Corp. v. Intel Corp.*,
    89 F. App'x 218 (Fed. Cir. 2004) ................................................. 31, 34

*Inverness Med. Switzerland GmbH v. Princeton Biomeditech Corp.*,
    309 F.3d 1365 (Fed. Cir. 2002) ......................................................... 35

*Oatey Co. v. IPS Corp.*,
    514 F.3d 1271 (Fed. Cir. 2008) ......................................................... 18

*Omega Eng'g, Inc. v. Raytek Corp.*,
    334 F.3d 1314 (Fed. Cir. 2003) ................................................... 10, 41

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) ..................................................... 9, 24

*Regents of Univ. of Minn. v. AGA Med. Corp.*,
    717 F.3d 929 (Fed. Cir. 2013) .......................................................... 12

*Rheox, Inc. v. Entact, Inc.*,
    276 F.3d 1319 (Fed. Cir. 2002) ......................................................... 36

*Saffran v. Johnson & Johnson*,
    712 F.3d 549 (Fed. Cir. 2013) .......................................................... 16

*Schumer v. Lab. Computer Sys., Inc.*,
    308 F.3d 1304 (Fed. Cir. 2002) ........................................................ 10

*Seachange Int'l, Inc. v. C-COR, Inc.*,
    413 F.3d 1361 (Fed. Cir. 2005) ........................................................ 16

*SmithKline Beecham Corp. v. Apotex Corp.*,
    439 F.3d 1312 (Fed. Cir. 2006) ........................................................ 19

*Southwall Techs., Inc. v. Cardinal IG Co.*,
    54 F.3d 1570 (Fed. Cir. 1995) ....................................................... 9, 34

*Spectrum Int'l, Inc. v. Sterilite Corp.*,
    164 F.3d 1372 (Fed. Cir. 1998) ................................................... 16, 30

*Springs Window Fashions LP v. Novo Indus., L.P.*,
    323 F.3d 989 (Fed. Cir. 2003) .......................................................... 16

*SRAM Corp. v. Formula S.R.L.*,
    Nos. 06 C 1025 & 07 C 1565, 2009 WL 928913
    (N.D. Ill. Apr. 3, 2009) ................................................................... 12

*Teleflex, Inc. v. Ficosa N. Am. Corp.*,
    299 F.3d 1313 (Fed. Cir. 2002) ........................................................ 13

*TorPharm Inc. v. Ranbaxy Pharms., Inc.*,
    336 F.3d 1322 (Fed. Cir. 2003) ........................................................ 34

*Tronzo v. Biomet, Inc.*,
    156 F.3d 1154 (Fed. Cir. 1998) ........................................................ 25

*Watts v. XL Systems, Inc.*,
    232 F.3d 877 (Fed. Cir. 2000) ......................................................... 25

*WMS Gaming, Inc. v. Int'l Game Tech.*,
    184 F.3d 1339 (Fed. Cir. 1999) ......................................................... 36

*Wonderland Nurserygoods Co. v. Thorley Indus., LLC*,
    No. 2:12-cv-00196, 2013 WL 141546 (W.D. Pa. Jan. 11, 2013)....... 12

## **RULES**

Fed. Civ. R. 47.5(b) ...................................................................... vii

## **STATUTES**

35 U.S.C. § 112 ...................................................................... 31, 35

## STATEMENT OF RELATED CASES

This appeal is related to United States International Trade Commission Investigation No. 337-TA-895. This appeal is also related to the following cases pending in federal district court directly involving Intervenors and Appellant here: *Char-Broil, LLC, v. A&J Manufacturing, LLC*, S.D. Ga., No. 2:13-cv-00140-LGW-JEG; *A&J Manufacturing v. Outdoor Leisure Products, Inc. et al.*, S.D. Ga., No. 2:13-cv-00120- LGW-JEG.

As noted in the Appellant's brief, there are a number of other district court actions involving the asserted patent and Appellant A&J Manufacturing, LLC. *See* Fed. Cir. R. 47.5(b). The Intervenors take no position on whether these cases are related to the present appeal.

## STATEMENT OF THE ISSUES

Intervenors Char-Broil, LLC ("Char-Broil") and Outdoor Leisure Products, Inc. ("OLP") (collectively "Intervenors") raise the following additional issue, which this Court need address only if it concludes that the Commission erred in its construction of the claim terms "openable [] cover" or "openable [] cover means":

(4)    Whether, under the "right for any reason" doctrine, the Commission's finding of noninfringement as to Intervenors Char-Broil and OLP should be affirmed because the term "exhaust" in the independent claims means "a pipe, duct, or similar structure that is attached to and extends from an openable cover, through which exhaust gases are expelled," and three of Char-Broil's four accused grills and all of OLP's accused grills lack such an "exhaust"?

## I.    STATEMENT OF THE CASE

Appellant A&J Manufacturing, LLC ("A&J") initiated an ITC investigation to prevent Intervenors from importing their successful, dual-mode grills into the United States, based on the alleged infringement of U.S. Patent No. 8,381,712 (the "'712 patent"). As opposed to being mere "imitat[ors]," as A&J argues, Opening Br. of Appellant ("Br.") 4, Char-Broil and OLP are industry leaders who design, develop, and sell their own grills. *See* JA12719, 12689–90.

The Commission construed the terms "openable [] cover" (in independent claims 1 and 17) and "openable [] cover means" (in independent claim 10) and, based on those constructions, correctly found that all of the accused products that are the subject of this appeal do not infringe any claims of the patent. JA1857, 3934–38. A&J concedes that those claim constructions are dispositive of noninfringement for all but one of the Intervenors' accused products. The Commission made a correct factual finding of noninfringement as to the remaining accused product, the Char-Broil model 463724512 grill (the "4512 Grill"). JA31–33, 5638–39. These conclusions should be affirmed.

If this Court reverses the Commission's decision on the construction of "openable [] cover" and "openable [] cover means," there is another basis for affirming the noninfringement finding.

The Intervenors (Respondents before the ITC) also argued below that the terms "exhaust" and "exhaust means" in each of the patent's three independent claims should be construed to refer to "a pipe, duct, or similar structure that is attached to and extends from an openable cover, through which exhaust gases are expelled." A5614. Though these constructions were rejected by the Commission, if they are adopted by this Court then three of Char-Broil's four accused grills and all of OLP's accused grills do not infringe. Each of these grills use lateral vents or other openings on the back of one or both of the cooking units, rather than the "pipe, duct, or similar structure" (like the smokestack shown in the '712 patent) as claimed. For example, Char-Broil's 4512 Grill has a lateral opening on the back of one cooking unit and a "butterfly" vent on the side of the other cooking unit. JA12736, 12883–87.



**Char-Broil 4512 Grill front and back perspectives**

Similarly, it is undisputed that OLP's grills have lateral vents rather than smokestacks, as shown in the example below. JA3910, 3937–38, 1500–09.



**OLP Model PS9500 Grill (JA1503)**

Because the Commission adopted A&J's proposed construction of "exhaust"

for claims 1 and 17, JA5617–19, it did not reach the question of whether the

Intervenors' grills infringe under the Intervenors' proposed construction recited

above. The Commission also determined that the "exhaust means" term in claim 10

should be governed by 35 U.S.C. § 112 and found that at least the 4512 Grill does

not infringe. JA28–29.

## II.    SUMMARY OF THE ARGUMENT

The Commission properly construed the terms "openable [] cover [means]"

in each of the independent claims, and based on those constructions correctly

concluded that none of the Intervenors' grills at issue in this appeal infringe the

'712 patent. In all but one case, A&J agrees that the construction is determinative

of infringement. In the remaining case (Char-Broil's 4512 Grill), the

Commission's determination of noninfringement must stand because it is based on

4

substantial evidence. Finally, should this Court disagree with the Commission's construction of these terms, the Intervenors herein explain that the Commission's ultimate determination of noninfringement still should be affirmed under the construction of the claim term "exhaust" propounded by Intervenors below.

**First, the Commission correctly construed the "openable [] cover" and "openable [] cover means" limitations in claims 1, 10, and 17.** A&J rightly concedes that these constructions are dispositive as to noninfringement by all but one of the grills at issue on appeal—and, in fact, are sufficient to affirm the Commission's entire ruling. With regard to claims 1 and 17 the Commission correctly construed "openable [] cover" to exclude any portion of the grill that is non-openable. A straightforward reading of the entire claim places the "openable [] cover" structure within the context of the other structures recited in the claim. Specifically, the openable cover is separate from, but attached to, the grill's support structure, and an exhaust is included *on* that separate, openable cover.

A&J's analysis divorces the term "openable [] cover" from the rest of the claim and ignores the specific arrangement of structures recited therein. A&J also attempts to reclaim scope that it abandoned years ago during prosecution. Besides the long history of narrowing amendments, A&J argued to the Board of Patent Appeals and Interferences that a "fixed portion" of a grill that was "not openable" did *not* constitute a "cover[]." That A&J was arguing an alternative ground for

reversing the examiner is irrelevant; alternative statements by an applicant as just as binding as its primary arguments.

The Commission also correctly interpreted claim 10's means-plus-function phrase "openable [] cover means" to similarly exclude fixed portions of the grill. The only structures disclosed to perform the function of "selectively covering" the first and second grills are the two openable covers over the grills shown in each of Figures 1–3 of the patent. The Commission correctly excluded the "firebox" in Figure 3 as one of the corresponding structures because A&J did not timely present that argument, its argument was not supported by any evidence, and the firebox structure is not clearly linked to the function of selectively covering either of the first or second grills. Applying these claim constructions, the Commission correctly found that none of the grills that are the subject of this appeal infringe any claim of the patent.

**Second, A&J's sole challenge to the Commission's application of these claim constructions—as applied to Char-Broil's 4512 Grill—fails because the Commission's finding is supported by substantial evidence.** Among that evidence is the testimony of A&J's own expert, who admitted that the alleged exhaust was merely a "space" or "hole" *between* the lid and the body of the grill, not *on* the lid as required by the claim.

**Last, if the Court determines that the Commission erred in its**

**construction of the "openable [] cover" limitations and adopts A&J's proposed construction, the Commission's noninfringement finding still should be affirmed as to most of the Intervenors' grills by applying a proper construction of the term "exhaust" to the undisputed evidence.**[1] Properly construed, the claimed "exhaust" (in claims 1 and 17)[2] is limited to smokestacks, pipes, ducts, or other such structures. The accused OLP products and most of the accused Char-Broil products do not have such an exhaust; rather they include lateral or vertical vents or spaces on the side or back faces of the grill, or on fixed windscreen portions of the grill—not smokestacks or similar structures.

The plain meaning and the prosecution history of the claims support the Intervenors' proposed construction of the claims because A&J repeatedly narrowed and disclaimed scope. Beginning with claiming little more than side-by-side grills, A&J narrowed its claims to "opening[s] . . . to permit the release of hot gases," and narrowed them again to its final term of an "exhaust." Given these consecutively narrowing amendments, A&J cannot recapture the broader scope of an "opening" (for example, a vent like those on the Intervenors' grills). At minimum, even if the

---

[1] Only the Intervenors present this argument because the Commission adopted A&J's proposed construction of "exhaust" in the proceedings below.

[2] As noted above, A&J does not appeal, so the Intervenors do not address, the Commission's interpretation of "exhaust means" in claim 10 or the finding of noninfringement based on that interpretation.

Court does not fully adopt the Intervenors' proposed construction of "exhaust" as requiring a smokestack-like structure, the construction must be *narrower than* an "opening." Thus the Court should at least affirm the noninfringement finding as to certain grills.

## III.   ARGUMENT

### A. Standard of Review

The Court may affirm the determination of the Commission on any ground the law and the record will support. *Cf. Glaxo Group Ltd. v. TorPharm, Inc.*, 153 F.3d 1366, 1371 (Fed. Cir. 1998).

### B. The Commission Correctly Construed Claims 1 and 17 to Require That the Recited Exhausts Must Be Located on the "Openable [] Cover"

The Commission correctly construed the term "openable [] cover" in claims 1 and 17 to mean a cover that excludes any portion of the grill enclosure that is not openable. A3910; A3925-26; A3934-38. The recited "openable [] cover" that "includes at least one exhaust" does not therefore encompass a grill with an exhaust on the fixed—*i.e.*, not openable—portion of the grill. This interpretation is consistent with the plain language of the claim. Additionally, the prosecution history shows the patentee's understanding at the time was that the "openable [] cover" is confined to non-fixed portions of the grill and that the claimed exhausts must be located on the openable cover.

### 1. Relevant Claim Construction Standards

"Claim construction analysis begins with the claim language itself . . . . As a starting point, the court gives claim terms their ordinary and accustomed meaning as understood by one of ordinary skill in the art." *Hockerson-Halberstadt, Inc. v. Avia Group Int'l, Inc.*, 222 F.3d 951, 955 (Fed. Cir. 2000). "[T]he prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Biogen Idec, Inc. v. Glaxosmithkline LLC*, 713 F.3d 1090, 1094–95 (Fed. Cir. 2013) (quoting *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005) (*en banc*)).

For example, the patentee may act as a lexicographer and ascribe a different or modified meaning to the term. *Hockerson*, 222 F.3d at 955. Arguments and amendments made during prosecution, as well as the specification and other claims, "must be examined to determine the meaning of terms in a claim." *Id.* (quoting *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995)). But "[i]f the patentee has not [given the term an unconventional meaning], the term's ordinary and accustomed meaning controls." *Id.*

Also, it is well-settled that amendments made to claims to avoid the prior art give rise to prosecution history estoppel. *Festo Corp. v. Shoketsu Kinzoku Kogyo*

*Kabushiki Co.*, 535 U.S. 722, 735 (2002). In fact, "a narrowing amendment made to satisfy any requirement of the Patent Act may give rise to an estoppel." *Id*. at 736 (discussing amendments made to comply with § 112).

The prosecution history is of "critical significance," particularly where it "limits the interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution." *Schumer v. Lab. Computer Sys., Inc.*, 308 F.3d 1304, 1313 (Fed. Cir. 2002) (internal quotation marks omitted). "[W]here the patentee has unequivocally disavowed a certain meaning to obtain his patent, the doctrine of prosecution disclaimer attaches and narrows the ordinary meaning of the claim congruent with the scope of the surrender." *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1324 (Fed. Cir. 2003) (noting that "prosecution disclaimer promotes the public notice function of the intrinsic evidence and protects the public's reliance on definitive statements made during prosecution"). Thus, claims may not be construed one way to obtain their allowance and in a different or inconsistent way against accused infringers. *Spectrum Int'l, Inc. v. Sterilite Corp.*, 164 F.3d 1372, 1379 (Fed. Cir. 1998). This Court has made it clear that the public is entitled to rely on an applicant's representations. *Hockerson*, 222 F.3d at 957.

### 2. The Commission's Interpretation Is Consistent With the Plain Meaning of the Claim as a Whole

The plain meaning of "openable [] cover" does not include the fixed portion of the grill for several reasons. In context, the claim sets out specific relationships

between its different elements. To understand those relationships, it is sufficient to

review the following portions of claim 1:

> A barbecue grill having multiple cooking units, comprising:
> a support structure configured to support a plurality of cooking units;
> a first cooking unit configured to cook food using gas cooking fuel, the first cooking unit attached to the support structure and including at least one first grill, the first cooking unit further including an openable first cover attached to the first cooking unit that selectively covers the first grill, wherein the first cover includes at least one exhaust . . . .

As recited, the grill comprises:

- A support structure

- A first cooking unit attached to the support structure

- The first cooking unit includes (1) a first grill and (2) an openable first cover *attached to* the cooking unit, and

- The first cover *includes* at least one exhaust.

Thus the plain language of the claim itself separates the openable cover of the

cooking unit from the grill of the cooking unit, and the claim further requires that

the exhaust is *included* on the cover. The exhaust is not an element of the cooking

unit; nor is the exhaust an element of the support structure. The claim requires the

openable cover to *include* the exhaust. So, in context, the "openable [] cover" must

have an exhaust on the cover that is not connected to another portion of the grill.

As expressly recited in every independent claim, the openable covers must

be "attached" to the cooking units. The term "attached" means that the openable

covers and the cooking units must be separate parts that are connected. *See Regents of Univ. of Minn. v. AGA Med. Corp.*, 717 F.3d 929, 935-39 (Fed. Cir. 2013) (affirming construction that claim limitation reciting that two disks were "affixed," "connected" and/or "joined" to each other required that the discs be physically separate, in part because of the ordinary meaning of "affix"); *Wonderland Nurserygoods Co. v. Thorley Indus., LLC*, No. 2:12-cv-00196, 2013 WL 141546, at *14–15 (W.D. Pa. Jan. 11, 2013) ("The Court also finds that the terms 'connected fixedly' and 'attached fixedly' imply to any person, whether of ordinary skill in the art or not, that there is a connection of separate pieces . . . ." (footnote omitted)); *SRAM Corp. v. Formula S.R.L.*, Nos. 06 C 1025 & 07 C 1565, 2009 WL 928913, at *10 (N.D. Ill. Apr. 3, 2009) ("Accordingly, we construe the term attached to mean a connection or joining of two components, whether or not the connection involves an intermediate component."). Thus, the plain meaning of the claim language requires that the covers containing the exhausts be components physically separate from but attached to the fixed body of the grill.

A&J also contends that the meaning of the term "openable [] cover" is plain, although it comes to a different conclusion as to the plain meaning because it ignores the surrounding context of the claim. At no point in its argument regarding the "ordinary meaning" or "broad interpretation . . . consistent with the specification" does A&J discuss or frame the term "openable [] cover" within the

12

surrounding context of the claim. *See* Br. 19–22. A&J thus skips over the *first source* for determining the ordinary meaning of a term. *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1324 (Fed. Cir. 2002) ("We begin our claim construction analysis, as always, with the words of the claim. . . . The language of the claim frames and ultimately resolves all issues of claim interpretation." (internal quotation marks omitted)). A&J's (irrelevant) citations to the three prior art references contained in the patent file wrapper might be evidence of such a meaning if they used the term "openable [] cover"—but they do not.[3] Even then, A&J's interpretations that the openable cover includes *any* "structure *above the plane of the [grill]* that covers or encloses the grill" strains credulity and is inconsistent with the claim as a whole. In context, the plain language of the claims requires the exhaust be included on the openable cover, which is attached to the cooking unit.[4]

---

[3] A&J argues that the Sarten, Beller, and Hathorn references support its interpretation of cover "to include two-piece grill covers." Br. 22–25. However, A&J merely submitted the Sarten and Hathorn references in an Information Disclosure Statement, while the Examiner simply cited the Beller reference without comment. JA9989; JA10216–17. None of these references were discussed by A&J or the Examiner during prosecution, and they indicate nothing regarding "how the Examiner and the inventor understood the claim terms." The fact that A&J was aware of prior art grills having "two-part covers" and failed to describe such structures in the '712 patent supports *confirming* the construction reached by the ITC—not reversing it.

[4] A&J's statements in prosecution therefore confirm the plain meaning of the claim.

### 3. A&J's Amendments and Statements In the File History Confirm the Commission's Construction

First, A&J confirmed during prosecution that an openable cover does not include portions of the grill enclosure that are fixed. In its appeal brief, A&J mischaracterizes the other parties' and the Commission's position on the prosecution disclaimer question as focusing on "one single sentence" from the file history, *see, e.g.*, Br. 18, 29, 31—as if a patent applicant could not disclaim scope in so few words. But in fact the A&J's position is reflected throughout the file history as a whole, until A&J put a point on the matter in the prosecution appeal brief. A&J's Appeal Brief to the Board of Patent Appeals and Interferences argued:

> Assuming, for the sake of argument, that this combination [of Cox and McLane] is even possible (which it is not), at best **it would result in a barbecue grill with chimneys connected to exit ports on the fixed portions of the oven/smoker enclosures which are not openable (i.e., not covers).** Thus, even if the references could be combined in the manner suggested in the Office Action, **the combination still fails to teach "wherein the first cover includes at least one exhaust**," and "wherein the second cover includes at least one exhaust," as recited in claim 22.

JA10321 (emphasis added). Here, A&J expressly equates the "fixed portions" of the enclosures with the portions of the grill enclosure that were not openable. A&J even uses "i.e.," meaning "that is" or "in other words," to emphasize its position that "enclosures which are not openable" *in other words* are "not covers."

A&J's statement expressly relates "fixed portions of [an] oven/smoker enclosure which are *not openable*" with "not covers." It is therefore an express and

14

unmistakable disclaimer of the possibility that a "fixed portion of" a grill or

smoker that is "not openable" could be construed as a "cover." The following

sentence confirms that disclaimer, where the A&J argues that the combination—"a

barbeque grill with chimneys connected to exit ports on *fixed* portions of the . . .

enclosure[]"—would *fail* to teach "the first cover includes at least one exhaust." If

a chimney (an exhaust) connected to a fixed portion of a grill would not meet the

claim limitation according to the A&J's appeal argument, then it cannot meet the

limitation for purposes of infringement.

A&J contends in its appeal brief that its remarks were "hypothetical" in

nature and were not "addressed to features of the invention" but rather to "the

hypothetical combination" suggested by the Examiner. These arguments are

irrelevant. The Examiner made a rejection of the claimed invention based on the

cited art. A&J argued to the B.P.A.I. that the examiner's rejection should be

reversed, among other reasons, because the proposed combination did not meet a

limitation of the claims.[5] "[A]n applicant's argument that a prior art reference is

---

[5] A&J's argument veers into blatantly false territory when it states, "There was absolutely no discussion about how the terms 'fixed portion' would apply to the grill of the '712 patent or pending claims." Br. 31. As shown, A&J argued that if the combination were made, the combination would "still fail[] to teach" a recited limitation of the claim because of the statement about what that combination would yield—"fixed portions . . . which are not openable (i.e., not covers)." JA10321. There is no question that the statement was made in the context of the language of the pending claims.

distinguishable on a particular ground can serve as a disclaimer of claim scope even if the applicant distinguishes the reference on other grounds as well." *Andersen Corp. v. Fiber Composites, LLC*, 474 F.3d 1361, 1374 (Fed. Cir. 2007). As this Court has explained before, "applicants rarely submit affirmative disclaimers along the lines of 'I hereby disclaim the following . . .' during prosecution and need not do so to meet the applicable standard." *Saffran v. Johnson & Johnson*, 712 F.3d 549, 559 (Fed. Cir. 2013). A&J's statement to the Board that fixed portions of enclosures "which are not openable" are "i.e., not covers," "extends beyond illuminating how the inventor understood the invention to provide an affirmative definition for the disputed term." *Id.* (citation and quotation marks omitted). Accordingly, the Commission's construction of "openable [] cover" in claims 1 and 17 should be affirmed.[6]

---

[6] In fact, there is no other construction a third party reading the file could reasonably come to. *See Seachange Int'l, Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1372 (Fed. Cir. 2005) ("The prosecution history constitutes a public record of the patentee's representations concerning the scope and meaning of the claims, and competitors are entitled to rely on those representations when ascertaining the degree of lawful conduct, such as designing around the claimed invention."); *Springs Window Fashions LP v. Novo Indus., L.P.*, 323 F.3d 989, 995 (Fed. Cir. 2003) ("The public notice function of a patent and its prosecution history requires that a patentee be held to what he declares during the prosecution of his patent.").

### C. The Commission Correctly Construed Claim 10 to Require That the Recited Exhausts Must Be Located on the "Openable [] Cover Means"

The Commission also correctly construed the term "openable [] cover means" in independent claim 10 to exclude fixed portions of the grill from within the scope of the "cover means." The Commission found that the claimed function in claim 10 is "selectively covering the [first and second] grill." JA70. While many of the structures performing that function are not disputed, A&J argued, for the first time in its prehearing brief, that the "fourth cooking mode unit 324" was a *second type* of cover structure that selectively covers a grill. *See* JA3676.

The Commission's decision to exclude the "fourth cooking mode unit 324" from the scope of the structures claimed is correct. As noted by the ALJ, this argument was untimely and there was "no record evidence underlying [A&J's] reliance on" that structure to support its broad construction; A&J's experts did not present testimony to corroborate a person of skill in the art's understanding of the claim (or specification). JA5625. While A&J argues in its opening brief that it produced evidence at the hearing to support the new argument, Br. 55–57, the evidence actually shows that Mr. Thuma *did not even rely* on the specification or prosecution history in reaching his conclusions, much less refer to any specific structures in the specification to support his opinions. JA8274:22–8285:1; JA8298:3–11. A&J's other expert likewise testified that he did not rely on the

17

specification to form his opinions about the construction of any of the claim terms—including claim 10. JA8203:3–10.

A&J's argument in its opening brief that the "firebox" lid is relevant to interpret what is the "fixed portion[]," *see* Br. 57–58, is a red herring. The question before the Court is what *structures* disclosed in the specification and figures are *clearly linked* to the function of selectively covering the first and second grill means. A&J appears to argue that the firebox lid shows "fixed portions" that are not opened, so that the Commission improperly excluded this lid from its interpretation of the openable cover means. *See id.* at 58. A&J's argument ignores that the firebox lid is not shown or described in the patent as "includ[ing] at least one exhaust [means]" for which the identification of what is a "fixed portion" is relevant. So the claim does not read on the embodiment of a "cover means" that A&J tries to rely on. *Cf. Oatey Co. v. IPS Corp.*, 514 F.3d 1271, 1276 (Fed. Cir. 2008) ("We normally do not interpret claim terms in a way that excludes embodiments disclosed in the specification."). It was proper for the Commission to exclude the firebox from its construction of the openable cover means limitation, and the Commission's claim construction should be affirmed.

### D. The Commission Correctly Determined That the Char-Broil 4512 Grill Does Not Infringe Under the Commission's Interpretation of "Openable [] Cover"

The 4512 Grill does not infringe the '712 patent under the Commission's interpretation of the "openable cover []" limitations because this particular grill does not include an exhaust on the openable cover.

### 1. A&J Waived Appeal of Noninfringement of Claim 10 as to All Accused Products

A&J has waived any argument that the Intervenors' grills—including Char-Broil's 4512 Grill —infringe independent claim 10. Arguments not raised in the opening brief are waived. *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319 (Fed. Cir. 2006). The Commission found that A&J's failure to present any evidence to support its infringement theory for claim 10 as construed by the Commission (limited to the disclosed smokestacks and their structural equivalents) doomed A&J's claims. *See* JA26–29.

A&J's brief does not argue against *any* of these conclusions. Rather, A&J focuses its argument about infringement by the 4512 Grill on the issue of whether there is an exhaust "on" the "openable cover." *See generally* Br. 59–63. In fact, most of the discussion about infringement in A&J's brief discusses claims 1 and 17 (or statements related to them), and A&J only offhandedly mentions claim 10 in the concluding sentence of the relevant section. *Id.* at 63. *Nowhere* does A&J contend that the Commission improperly construed the "exhaust means" limitation

of claim 10, improperly applied its construction, or improperly found there was no evidence to support a finding of no infringement. A&J therefore waived any argument that any of the grills identified by the Commission meet the limitation of "exhaust means" in independent claim 10. *See* JA29–30. The Commission's determination of noninfringement of claims 10–16 must be affirmed.

### 2. Substantial Evidence Supports the Commission's Finding That the Char-Broil 4512 Grill Does Not Infringe

Applying the Commission's correct claim construction of the "openable []" cover," the ALJ found that the 4512 Grill's "gap" between the openable cover and the fixed portion of the grill did not satisfy "includes at least one exhaust" limitations. JA5638. The Commission Opinion agreed, finding "no error, much less clear error, with these findings." JA31. However, one Commissioner dissented from this part of the opinion, adopting the statements by A&J's expert, Mr. Thuma, who testified that the 4512 Grill's exhaust "extends into the cover" and "changes position and moves along with the cover." JA34 n.12.

Notwithstanding the lone Commissioner's views, the Commission determination of no infringement is correct and supported by substantial evidence. As the Final ID itself described, the evidence shows that the 4512 Grill does not have an exhaust *on* its openable cover, as the asserted claims require. JA5638. Instead, as shown in the pictures below, the 4512 Grill provides a gap between the openable cover and the fixed portion of the grill.

20



**Char-Broil 4512 Grill back perspectives (JA12883–87)**

The Final ID cited the testimony of A&J's expert—the same expert relied upon by the dissenting Commissioner and A&J in its appeal brief—who confirmed that the alleged exhaust is "the space *between* the openable lid and the grill body." JA5638 (quoting JA8341, ll. 3–8). The Intervenors' expert, Dr. Stevick also testified that the 4512 Grill's opening was not part of the cover and therefore was not an exhaust included within openable cover. JA8992:4–8993:7.

A&J's opening brief cites to Mr. Thuma's description of a "channel exhaust." *See* Br. 62. But Mr. Thuma's testimony that the space in the 4512 Grill is a "channel" lacks credibility. Mr. Thuma admitted on cross-examination that a "channel" exhaust would need to have some "some way of directing the flow" of gas. JA8353, ll. 3–6. He then equated "directing" flow to merely "*allowing* [gases] to escape, in order to come to his opinion that the "hole" or "opening" in the back of the grill was a channel, JA8355 ll. 1–6. At any rate, in view of all the testimony

21

and other record evidence, the fact-finder was entitled to disregard or discount Mr. Thuma's contradictory testimony and, instead, rely on the consistent testimony between Mr. Thuma and Dr. Stevick to find the 4512 Grill did not infringe. The "hole" or "space between the lid and the body," as Mr. Thuma even characterized it (JA8355 ll. 1–6), simply cannot meet the exhaust structure limitation positively recited in the claims. Thus, applying the proper construction of the claim terms, the Commission determined it was *undisputed* that the 4512 Grill's exhaust was not *on* the openable lid. The dissenting commissioner's view incorrectly applies the "includes" construction adopted by the Commission and equates a mere *space* between two elements of an accused grill with the required *exhaust structure* limitation.

### E. The Commission's Determination That None of the Grills at Issue Infringe Claims 1 or 17 Also May Be Affirmed Because the Char-Broil and OLP Grills Do Not Include the Claimed "Exhaust"

If the Court affirms the Commission's construction of the openable cover terms as discussed in Parts IV.B and C above, then it need not reach this alternative basis for affirming the Commission's finding of noninfringement for the accused Char-Broil and OLP products.

That said, the Commission's determination of noninfringement also is warranted because, under the proper construction, OLP's grills and three of Char-Broil's grills at issue do not include the claimed "exhaust" of independent claims 1

or 17 on one or both of the cooking units.[7] Based on the intrinsic record, the "exhaust" in these claims is limited to "a pipe, duct, or similar structure that is attached to and extends from an openable cover, through which exhaust gases are expelled."

As originally filed, the application made no reference to the term "exhaust" (or "exhaust means"). The only originally-filed disclosure identified as providing support for "exhausts" are the unlabeled drawings of smokestacks in Figures 1 through 3. *See generally* JA9937–52.[8]

Any doubt on this issue was removed when A&J voluntarily cancelled or amended pending claims in response to repeated rejections by the Examiner. By acquiescing to the Examiner's rejections, A&J relinquished a claim scope of "exhaust" that would encompass "openings" on the accused grill lids. Instead, this term is limited to the smokestack-type structures identified in the specification.

---

[7] *Both* claims require *two* cooking units; each cooking unit must have its own openable cover with at least one claimed exhaust. For example, grills that have a smokestack-like structure on a charcoal section of the grill, but not on a gas cooking section, do not infringe. *E.g.*, JA4618–20; JA4623–25.

[8] This statement was submitted by A&J to the PTO over six years after the original application filing. *Id.*

## 1. The Proper Construction of the Term "Exhaust" in Claims 1 and 17 Is Limited to Smokestack-Like Structures

The barbeque grill of Claims 1 and 17 has at least one "exhaust" attached to the "openable [] cover" of the first and second cooking units. The proper construction of exhaust is "a pipe, duct, or similar structure that is attached to and extends from an openable cover, through which exhaust gases are expelled." This construction is the one that most naturally aligns with the plain and ordinary meaning[9] of the term as well as the intrinsic evidence of the '712 patent. *See* JA10644–45 at Q/A43–44; JA8910:12–8911:10. The ordinary and customary meaning is derived first and foremost from evidence *intrinsic* to the patent, which is limited to the claim language, the specification, and the file history. *Phillips*, 415 F.3d at 1314.

Nothing in the claims themselves provides a clear understanding of the recited "exhaust." The specification, which is usually the best guide to the meaning of a disputed term, *id.* at 1315, also does not define the term. What the specification does do is refer to "exhaust" and "exhaust means" by bare numeral references to the smokestacks in the drawings. *See, e.g.*, JA373, 376 at 1:25–38.

---

[9] "Exhaust is defined as: 'A duct or pipe through which waste material is emitted;' (http://www.thefreedictionary.com/exhaust); 'a pipe through which exhaust gases come out;' (Oxford Advanced Learner's Dictionary, http://oald8.oxfordlearnersdictionaries.com/dictionary/exhaust), or 'a pipe or system of pipes through which exhaust is released,' (Merriam-Webster Dictionary, http://www.merriam-webster.com/dictionary/exhaust)." *See* JA515 n.8.

There is no disclosure of a concept of "exhaust" that is *broader* than a pipe, duct, or other similar structure anywhere in the '712 patent.

And the express references to exhausts as the six specific structural elements 112, 122, 212, 222, 312, and 322, if anything, indicates a narrowed understanding of the term "exhaust." These references certainly do not support a broad reading of "exhaust" to encompass *any* openings in grills through which gases may pass. *Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1159 (Fed. Cir. 1998) (holding that a patent specification disclosure limited to a cup having a conical shape did not provide support for the breadth of a later claim to a cup generic as to shape: "the '589 patent discloses only conical shaped cups and nothing broader. The disclosure in the '589 specification, therefore, does not support the later-claimed, generic subject matter in claims 1 and 9 of the '262 patent.").

Finally, the prosecution history shows that the claimed exhausts should be accorded a construction commensurate with the structures shown in patent Figures 1–3 and nothing more. *See Watts v. XL Sys., Inc.*, 232 F.3d 877, 882–85 (Fed. Cir. 2000) (affirming grant of summary judgment of noninfringement where statements in the prosecution history supported limiting the invention to the embodiment disclosed in the specification). As originally filed, the application included no references to any "exhaust," "exhaust means," or "openable first/second covers"—either in the claims or in the specification describing or defining them.

25

*See generally* JA9937–52. Even the threadbare labels for reference numerals were omitted. *Id.* Instead, these terms were later added by *amendment*, in response to specific prior art rejections, to secure allowance of the claimed subject matter, as explained below.

In November 2009, the Examiner rejected pending claims 1–2 and 16–17 as anticipated by either Pepin (U.S. Pat. No. 3,802,413) or McLane (U.S. Pat. No. 4,878,477). JA10054–56. Pepin was said to disclose a combined camping stove and barbecue having an upper barbecuing portion using charcoal 36 and a lower stove portion provided as a heating or stove element 27 that slides out from the case 20 to allow a second cooking surface. JA10055.



**Pepin Figures 4 and 9 (JA1094)**

McLane was said to disclose a barbecue grill having multiple grill housings in a common support stand. *Id.* As shown in Figure 1 below, grill housing 14 is adapted to be used with a gas heating unit while grill housings 16 are adapted to be

used with conventional charcoal heat sources. Grill housings 14 and 16 are housed

by support frame 13, which is supported by stand 12. JA10439 at 3:4–27.



**McLane Figure 1 (JA10435)**

In both grounds of rejection, the Examiner stated that each reference disclosed all

features of the rejected claim(s). JA10054–56.

In response, A&J amended the claims, adding new independent claim 21

directed to a multiple mode barbecue grill having, *inter alia*, a second retractable

cover that included "at least one *opening* formed therein that permits the release of

hot gases." JA10074 (emphasis added). In the remarks accompanying the

Amendment, A&J urged that claim 21 was neither anticipated nor rendered

obvious by the prior art. No other arguments were presented. JA10070.

Then, in May 2011, the Examiner rejected the then-pending independent

claims under § 103 based on McLane in view of Nemec, stating it would have been

obvious to include openings to permit the passage of gas in order to vent the

chamber and control cooking in it. *See* JA10150. The examiner cited Nemec as

disclosing an "opening (*through* smokestack 48, *see* Fig. 1) to permit the passage

27

of gasses" with regard to prosecution dependent claim 30. JA10155 (emphasis added).

The Examiner further rejected the claims as obvious in view of Ganard, said to disclose a second cooking unit that "comprises at least one opening . . . to permit the passage of gases." JA10158. Figure 1 of Ganard is shown below, showing a grill with smokestack 28 positioned on end wall 26 of smoker chamber 12 and lid 20 connected by hinges 22. JA10513, 10518 at 3:15–54.



**Fig. 1**

**Ganard Figure 1 (JA10513)**

The examiner explained that Ganard, like Nemec, teaches an "opening (*through* 28) to permit the passage of gasses." JA10158 (emphasis added). It was thus understood by at least the examiner that the claimed "opening" was not itself structure but rather the lack of structure *through* which gas passes.

On August 25, 2011, A&J responded to the rejection by, among other amendments, deleting dependent claims reciting an "opening," including claims 30

and 31. A&J also amended each of the pending independent claims to require the first and second covers to include at least one "exhaust." JA10193–96 (canceling claims 30–31 and 38–39). A&J also amended independent claim 22 to require that the grill have "an openable first cover attached to the first cooking unit . . . wherein the first cover includes at least one *exhaust*" and "an openable second cover attached to the second cooking unit . . . wherein the second cover includes at least one *exhaust*." JA10193–94 (emphasis added).[10]

Regarding means-plus-function claim 32 (issued claim 10), A&J responded to the rejection by specifically identifying the structures that corresponded to the means-plus-function limitations.[11] JA10201–03. A&J amended claim 32 to require openable cover means attached to each of the two cooking means with each cover means including at least one exhaust means. JA10194–95.[12]

---

[10] This language continued into the issued claims. Notably, A&J added the limitations requiring the openable covers to include exhausts after the Examiner stated, "Nemec does not teach the cover (cover means) comprising the opening (means for permitting the passage of gases)." JA10155.

[11] For the "at least one exhaust means" of the first cover, A&J pointed to the two smoke stacks on the first cooking mode unit in Figs. 1 and 2. A&J identified the smoke stack on second cooking unit 120, 220 as the "at least one exhaust means" of the second cover. JA10202.

[12] In the amended claims, the configuration of the exhaust/exhaust means was to be based on the type of fuel used in each cooking unit. JA10194–95.

Concerning the prior art rejections, A&J argued that the claim language added to independent claims 22, 32, and 40 regarding the exhausts included in the first and second covers formed the basis of patentability for these claims. JA10203–09. A&J distinguished the prior art Nemec and Ganard references, stating:

> [N]either Nemec nor Ganard teaches or suggests that the configuration of one smoke stacks [sic] on the cover of one cooking unit would be based on the type of fuel used in that cooking unit, and that the configuration of another smokestack on the cover of another cooking unit would be based on the type of fuel used in that other cooking unit. Thus, **applicant submits that Nemec and Ganard failed to teach or suggest . . . "an openable first cover . . . includ[ing] at least one exhaust" . . . and "an openable second cover attached to the second cooking unit . . . includ[ing] at least one exhaust**."

JA10204–05 (emphasis added).

By arguing that neither reference taught or suggested a smokestack on the covers of the first or second cooking units, and further equating smokestacks with the claimed exhausts, A&J limited the claimed exhausts to be smokestacks, as opposed to vents or other types of openings, in order to overcome the prior art rejections. *Spectrum*, 164 F.3d at 1378 ("[E]xplicit arguments made during prosecution to overcome prior art can lead to narrow claim interpretations . . . because 'the public has a right to rely on such definitive statements made during prosecution.'" (quoting *Digital Biometrics, Inc. v. Identix, Inc.*, 149 F.3d 1335, 1347 (Fed. Cir. 1998))). In making such statements, A&J "act[ed] as his own

lexicographer" and resolved any ambiguity as to the meaning of the term

"exhaust." *Intergraph Corp. v. Intel Corp.*, 89 F. App'x 218, 225 (Fed. Cir. 2004).

Accordingly, A&J "cannot now obtain a broader interpretation of that term." *Id.*

The Examiner again rejected all of the narrowed claims in December 2011.

First, he rejected them under 35 U.S.C. § 112 and objected to the drawings, both

relatedly for not describing or showing the claimed exhausts. JA10227–28.

Second, he also rejected the claims as obvious over McLane in view of Cox,

this time referring to specific *structures* as disclosing the claimed exhausts. The

McLane and Cox patents teach barbecue grills with multiple cooking units that are

simultaneously operable. *See generally* JA10420, 10434. Figure 1 from the Cox

patent, issued on October 20, 1987, is reproduced below. *See* JA10421.



**Cox Fig. 1 (JA10421)**

The Examiner cited the chimney structures 18 and 22 as disclosing the claimed exhausts: "Cox teaches [an] exhaust 92 on the first cooking unit and two exhausts 18 and 22 on the second cooking unit (*see* Fig 1)." JA10232. While the Examiner acknowledged that Cox failed to show the exhausts located on the openable covers of the cooking units, he considered the modification to have the exhausts actually on the cover to be an obvious matter of rearrangement of parts that would not affect the functioning of the units. JA10232–33. The Examiner also noted that having the exhaust on the cover was well known in the art, citing to Holland. JA10233.

Once more, A&J amended the specification and figures to emphasize the smokestacks on each of the grills in Figures 1–3 and to expressly identify—for the first time—the smokestacks in the figures as "exhaust[s]." JA10276–77, 10286–88. A&J cited the elements in Figures 1–3 as the *sole* support for "exhaust[s]" on the openable covers and amended the specification to specifically name smokestacks 111, 122, 211, 222, 311 and 322 as exhausts. JA10276–77. At no point did A&J amend the specification to disclose a broader inventive concept of exhausts than that depicted by the numbered smokestacks in each of Figures 1–3; A&J in fact could not have without disclosing new matter. Further, A&J deleted claim language requiring exhausts to be configured based on the type of fuel used in the cooking unit. JA10278–82.

In an Interview Agenda dated December 13, 2011, A&J stated: "[T]he as-filed drawings illustrate that the exhausts for the respective gas and solid fuel cookers differ in at least the number of exhaust elements." JA10271. A&J thus specifically characterized the smokestacks of the drawings as *exhausts* of the gas and solid fuel cookers rather than *examples* of exhausts, or as representative of a more broadly disclosed concept. Similarly, A&J's Appeal Brief before the PTO repeatedly characterized the claimed *exhausts* and *exhaust means* by reference to the exact same structures in the specification: Figures 1–3, Nos. 112, 212, 312, 122, 222, and 322. *E.g.*, JA10309–12. A&J thus repeatedly equated the scope of *exhaust* and *exhaust means* by identifying the same disclosure and structures as support for each. If there were any ambiguity regarding the construction of "exhaust," A&J, in making such statements, "act[ed] as his own lexicographer" and resolved any such ambiguity. *Intergraph*, 89 F. App'x at 225. Accordingly, A&J "cannot now obtain a broader interpretation of that term." *Id*.

Absent any original description or disclosure of a broader inventive concept or a broader definition, there is no basis to construe either term any more broadly than what A&J was able to cite to in its specification. A&J referenced the enumerated smokestacks as the sole support for both the exhausts and exhaust means as claimed, and relied upon the enumerated smokestacks for support during prosecution.

33

By narrowing the claims in response to prior art and other rejections, A&J conceded to the Patent Office and the public what the claims do not cover. *See Digital Biometrics*, 149 F.3d at 1347 (restricting scope of all claims based on remarks distinguishing the claimed invention from prior art.). The '712 prosecution history limits the construction of the claims so as to exclude any interpretation that was disclaimed or disavowed during prosecution in order to obtain claim allowance. *Southwall*, 54 F.3d at 1576.

By failing to substantively argue against any of the rejections and instead narrowing the claims, A&J acquiesced to the Examiner's view of the claims. This constitutes a relinquishment of any claim scope encompassed by the canceled or pre-amended claims. *TorPharm Inc. v. Ranbaxy Pharms., Inc.*, 336 F.3d 1322, 1330 (Fed. Cir. 2003) ("In ascertaining the scope of an issued patent, the public is entitled to equate an inventor's acquiescence to the examiner's narrow view of patentable subject matter with abandonment of the rest. Such acquiescence may be found where the patentee narrows his or her claims by amendment or lets stand an examiner's restrictive interpretation of a claim." (citations omitted)); *Inverness Med. Switzerland GmbH v. Princeton Biomeditech Corp.*, 309 F.3d 1365, 1372 (Fed. Cir. 2002) ("A broader definition may be disclaimed, for example, where the examiner adopts a narrow definition and the applicant does not object.").

A&J repeatedly attempted during prosecution to broadly claim "openings" located on the grill covers to permit the passage of gases, and those claims were repeatedly rejected as obvious under § 103 or as failing to meet the adequate description requirements of § 112. Having canceled its claims reciting covers with, *e.g.*, "openings formed therein that permit the release of hot gases," "openings to permit the passage of gases," and "means for permitting the passage of gases," A&J should not now be accorded a construction of *exhaust* or *exhaust means* that is nearly identical to those earlier claims rejected by the examiner, and cancelled in response. The prosecution history therefore makes clear that the claimed exhausts are properly construed to refer to the structures relied on by A&J as support for those terms, and not more broadly to any openings in the cover through which waste gases may pass. *Rheox, Inc. v. Entact, Inc.*, 276 F.3d 1319, 1326–27 (Fed. Cir. 2002).

### 2.  Char-Broil Does Not Infringe Claims 1 or 17 Under the Proper Construction of "Exhaust"

Three of the four Char-Broil grills that A&J has accused of infringing do not include exhausts within the meaning of the claims discussed above on both the first and second cooking means, as required by the claims. *Cf. WMS Gaming, Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1350 (Fed. Cir. 1999) ("If even one limitation is missing or not met as claimed, there is no literal infringement.").

One model, the 4512 Grill discussed above, has an opening to expel gas in the form of a "butterfly" vent in the body of the charcoal cooking unit—an adjustable opening that can be used to regulate the temperature by regulating air flow. JA12883–87, JA12736. The openable cover attached to the gas cooking unit has no pipe, duct, or other similar structure that would allow for waste gases to be expelled. The gases flow through a rectangular space or "gap" between the back of the lid and the firebox. This is not a structure at all, much less anything like a smokestack; it is a *lack* of structure.[13] JA1174, JA12736, JA12883–87.



**Char-Broil 4512 Grill front and back views**

---

[13] This "gap" is not on the openable cover, it sits between the openable cover and the fixed portion of the grill. *See* JA5638 (quoting JA8341 at ll. 3–8).



**Char-Broil 4512 Grill back perspective**

The newer versions of Char-Broil grills addressed below similarly do not have a pipe, duct, or similar structure (such as a smokestack) included on both cooking modes' openable covers, as the claim requires. The Char-Broil grill Model No. 463724514, referred to as the "New Char-Broil Grill" indisputably has no smokestack. JA12739–40, 12941; *see also* JA632. Instead, the openings to release gas are below the lids on the rear side of the grill. *Id.*



**New Char-Broil Grill back perspective**

Likewise, Char-Broil's New Oklahoma Joe Combination Charcoal/Gas Longhorn Grill (Model No. 14201767), shown below, also does not include the claimed exhaust (a smokestack) on the gas cooking unit. The charcoal cooking section is on the left; behind the hinged lid, on the fixed portion of the grill, is a smokestack for the charcoal section. The gas cooking section, on the right, includes lateral vents on the rear side of the grill. JA12744, 13001–06.



**Char-Broil 4512 Grill front and back views (JA13001–02)**

The New Oklahoma Joe Grill does *not* include a smokestack exhaust on *both* the first (charcoal) and second (gas) cooking sections, as the claims require. Thus, in addition to the fact that all vents or exhausts on the New Oklahoma Joe grill remain located on the fixed body of the grill, behind the location where the openable lid attaches to the body, the vents on the gas cook unit do not constitute exhausts within the meaning of the '712 patent.

The lateral openings on the back of these three grills are akin to those illustrated in the prior art and cited during prosecution of the '712 patent. *See, e.g.*,

U.S. Pat. Nos. 6,257,130 and 6,523,461. Similarly, the butterfly vent on the charcoal-side, and the gap between the lid and the grill base on the gas-side, of the Char-Broil 4512 Grill are not "exhausts" as claimed, because they are not *chimneys, pipes, ducts, or structures otherwise attached* to and *extending from* the openable covers, as plainly illustrated. Accordingly, as a matter of law,[14] the New Oklahoma Joe Grill, the New Char-Broil Grill, and the Char-Broil 4512 Grill do not infringe the '712 patent.[15]

### 3. None of the OLP Grills Infringe Claims 1 or 17 Under the Proper Construction of "Exhaust"

The OLP Redesigned Grills were found not to infringe in the by virtue of having a fixed windscreen with lateral vents, and thus no "exhaust" on an "openable cover," as claimed. JA3910, 3937–38, 1500–09. The relevant structure, which is exemplary as to all of these grills, is shown below:

---

[14] A&J has never contended that these grills infringe under this narrower construction of "exhaust/exhaust means."

[15] As argued above, A&J waived any appeal of the Commission's noninfringement determination as to claim 10. If the Court disagrees as to the waiver issue, the arguments and evidence here apply equally to claim 10.



**OLP Model PS9500 Grill (JA1503)**

However, even under A&J's improper construction of the "openable []

cover" terms of claims 1 and 17, the OLP Redesigned Grills do not infringe

because these grills lack any "pipe, duct, or similar structure that is attached to and

extending from an openable cover, through which exhaust gases are expelled,"

which Intervenors contend is the proper construction of "exhaust." It is undisputed

that, in the OLP Redesigned Grills, the cover or lid of the gas grill side has no

openings and the fixed windscreen portion has only lateral vents.[16] JA1501.

Accordingly, the proper construction of "exhaust" presents an alternative basis of

finding the OLP Redesigned Grills do not infringe.

---

[16] OLP acknowledges that the Commission found the "Original" OLP grills to
infringe based in part on the Commission's construction of "exhaust." As those
grills were discontinued, JA1500–01, OLP did not appeal the Commission's
determination as to these grills and does not do so here.

### 4. At Minimum, the Char-Broil 4512 Grill and the New Char-Broil Grill Do Not Infringe Because the Scope of "Exhaust" Must Be Less Than the Earlier Claimed "Opening"

Even if the Court does not adopt Char-Broil's proposed construction of the term "exhaust" as discussed above, the Court should at least conclude that the scope of the term must be *less* that the originally claimed "opening" by operation of prosecution disclaimer. As discussed previously, a patentee cannot recapture specific meanings disclaimed during prosecution. *Omega Eng'g*, 334 F.3d at 1324–26. As noted, the April 5, 2010, claim amendments added claim 21 reciting a cover that "includes a least one *opening* formed therein to permit the release of hot gases." JA10074. The August 25, 2011 amendment all remaining claims with references to an "opening" in the cover and added the limitation that the cover "includes at least one exhaust." *See* JA10193 (cancelling claim 31, which included the "opening" element, added by amendment at JA10125–26). Thus A&J narrowed its scope from claiming the cover included an "opening" to claiming the cover included an "exhaust." A&J cannot now recapture the broader scope of any "opening" included on the cover. And, as A&J's expert admitted, the alleged "exhaust" on the 4512 Grill is merely an "opening" or "hole" on the back of the grill. JA8351 at ll. 14–19 (describing the space between the grill body and the cover as an "opening" and a "hole," in addition to incorrectly characterizing it as a channel). The 4512 Grill and the "New Char-Broil Grill" discussed in this part

cannot, therefore, infringe claims 1 or 17 because their "opening" in the back

cannot meet the "exhaust" limitation of the claims based on prosecution

disclaimer. For this additional reason, the Commission determination of

noninfringement as to those products should be affirmed.

## IV.    CONCLUSION

For the foregoing reasons, the Respondents' grill products at issue do not

infringe any asserted claim of the '712. The Court should affirm the Commission's

determination of noninfringement.


Dated: June 24, 2016          /s/ John W. Harbin
                              John W. Harbin
                              Warren J. Thomas
                              MEUNIER CARLIN & CURFMAN LLC
                              999 Peachtree Street, N.E., Suite 1300
                              Atlanta, Georgia 30309
                              Tel: (404) 645-7700
                              Fax: (404) 645-7707
                              jharbin@mcciplaw.com
                              wthomas@mcciplaw.com

                              *Attorneys for Intervenor Char-Broil, LLC*


                              /s/ Brian K. Shelton
                              Michael R. Dzwonczyk
                              Brian K. Shelton
                              Mark Boland
                              SUGHRUE MION, PLLC
                              2100 Pennsylvania Ave. NW
                              Washington, DC 20037

Tel: (202) 293-7060
Fax: (202) 293-7860
mdzwonczyk@sughrue.com
bshelton@sughrue.com
mboland@sughrue.com

***Attorneys for Intervenor Outdoor Leisure Products, Inc.***

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because this brief contains **9,090** words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), as counted by Microsoft Word 2013, the word processing software used to prepare this brief.

This brief complies with the typface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proporationally spaced typeface using Microsoft Word 2013 in Times New Roman 14-point font.

Date: June 24, 2016         <u>/s/ John W. Harbin </u>
                                  John W. Harbin
                                  ***Attorney for Intervenor Char-Broil***

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that, on this 28th day of June 2016, I have

electronically filed the foregoing Corrected Intervenors' Brief with the Clerk of

Court for the United States Court of Appeals for the Federal Circuit using the

CM/ECF system, which will automatically send e-mail notification of such filing

to the attorneys of record.

/s/ John W. Harbin
John W. Harbin
***Attorney for Intervenor Char-Broil***